Ralph E. Cory, J.
The instant cases arose by the filing of a child abuse petition in Bungs County Family Court. After a preliminary hearing respondents’ attorney’s application to transfer the case to Richmond County to be heard along with the pending neglect case was granted. The proceeding was transferred to Richmond County to be heard together but not consolidated, at the discretion of the Judge.
After a fact-finding hearing the court found that child abuse was not established and the charges were reduced to neglect as to the child Terry. In the dispositional hearing, Terry was remanded to the Angel Guardian Home. The remand was subsequently vacated and Terry was ordered returned to the respondents, the child’s parents. Both parents are recent immigrants, the mother a Yugoslavian native and the father an Albanian native. The parents were to receive instruction in the care of children, proper health and safety and the prevention of injuries. They were also to obtain cribs, rather than permitting their children to sleep on the floor and mats. Finally, after many adjournments in which the respondents failed to appear, a warrant was executed and the parents appeared in court with Fred. The child abuse petition was amended to add Fred and he was remanded to the Commissioner of Social Services. Terry was hospitalized for the second time for dehydration, bruises and bites and other serious injuries. Both respondents were then remanded to Bellevue Hospital for observation and complete medical and psychiatric examinations because of long hysterical outbursts in court where they were physically removed with great difficulty. (Family Ct. Act, § 251.) The children were on continued remand away from their home and Fred was deleted from the original petition on consent of the Corporation Counsel, Law Guardian and the attorney for the respondents. Before the conclusion of the fact-finding hear *685 ing on the instant petition, a new infant baby girl, Mary, was born to the respondent mother on March 20, 1971.
A new petition was drawn to have Mary declared neglected in that she was in danger of being found neglected since there is presently before this court a petition to have Terry declared abused and Fred to be neglected.
After listening to oral argument by the Corporation Counsel who demanded that the new infant child be removed from the parental home on the grounds there would be substantial probability that the child will be found to be abused or neglected under article 10 of the Family Court Act (§ 1028, subd. [b]) and that she was in grave imminent danger to her life and limb, and arguments in opposition by the attorney for the respondents that such drastic action without one scintilla of evidence that a baby four days old had been neglected would be a serious violation of due process, this court temporarily remanded the infant to the Commissioner of Social Services Angel Guardian Home and ordered a hearing on this issue.
There is thus before this court for decision two petitions in which a fact-finding hearing has been held. Even though the original neglect petition is not before this court for decision, it is nevertheless before the court for an adjourned dispositional hearing in view of the subsequent injuries to Terry, as well as the original neglect petition of Terry, since the two petitions are inseparable and cannot be severed by virtue of the fact that both petitions involve the same child.
The attorney for the respondents objected to the introduction into evidence of the previous child abuse case, reduced to neglect as severely prejudicial to his clients and a severe violation of due process and their constitutional rights. This argument is without legal merit.
Article 10 of the Family Court Act (Child Protective Proceedings) is designed to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental and emotional well being. It is designed to provide a due process of law for determining when the State through its Family Court, may intervene against the wishes of the parent on behalf of a child so that his needs are properly met. (Family Ct. Act, § 1011.)
The instant petitions involve a badly battered child, medical and hospital records of which are indisputable, involved in two separate instances of serious injuries about a year and three months apart. The child is only three years old. Due process of law, under the facts and circumstances of these cases, would require a careful scrutiny of the medical history and records of *686 the child as admissible evidence to determine if a pattern of child abuse or neglect is involved in the two separate instances. Due process is required not only for the parent respondents but necessarily and more importantly for the health, safety and welfare of defenseless children ivhere the court under its role of parens patriae must be microscopic not casual in its ascertainment of facts based on credible evidence.
The record is crystal clear and unchallenged that the respondent parents disobeyed at least four orders of this court on the original petition to produce the child Terry in court for progress reports as to her health, safety and welfare. They failed to appear and were produced in court on November 30, 1970 only by execution of a warrant, previously stayed, and then only after the second hospitalisation of the same child Terry for serious injuries on November 6,1970.
The Family Court not only has exclusive original jurisdiction over Child Protective Proceedings under article 10 of the Family Court Act, but also of necessity has continuing jurisdictions for the health, safety and welfare of children. As a matter of record, the dispositional hearing on the original petition (regarding child Terry) had never terminated and remains open. Orders of this court on this disposition were violated with impunity (not once but four times) leading directly to the new child abuse petition. While technically and legally, two petitions are before the court on the seriously injured child Terry, one for fact-finding, the other for disposition, they are not separate and distinct since the same child is involved. This is the link and continuity that gives the court continuing jurisdiction under the act (Family Ct. Act, art. 10). Accordingly, the medical and hospital records of the first petition are necessarily includable evidence in the fact-finding hearing on the instant child abuse petition. As part of the over-all picture, the medical histories and hospital records of both must be combined for the proper ultimate dispositional hearing.
Furthermore, the records of the first admission of the child Terry to the hospital are admissible under section 1038 and section 1046 (subd. [a], par. [iv]) of the Family Court Act. Section 1038 states that ‘ ‘ each hospital * * * having custody of any records, photographs or other evidence relating to abuse or neglect, upon the subpoena of the court, the corporation counsel * * * counsel for the child * * * shall * * * send such records, photographs or evidence to the court for use in any proceeding relating to abuse or neglect under this article.” (Emphasis supplied). Section 1046 (subd. [a], par. [iv]) of the Family Court Act states that ‘ ‘ any writing, *687 record or photograph * * * relating to a child in an abuse or neglect proceeding of any hospital * * * shall be admissible into evidence in proof of that condition * * * if the judge finds that it was made in the regular course of the business of any hospital * * * [proper certification thereof] shall be prima facie evidence of the facts contained in such certification.” (Emphasis supplied.)
Also admissible into evidence is any report filed pursuant to section 383-a of the Social Services Law (Family Ct. Act, § 1046, subd. [a], par. [v]). These latter forms contain history of parents and other necessary information as relayed by parents and are admissible evidence as to how the injuries occurred. Prior hospital records may be introduced (6 years prior) involving same party. (Matter of Three “ John ” Children, 61 Misc 2d 347.) In the instant case, the hospital records covered a period of one year and three months prior to the commencement of this action where the child Terry suffered several fractured ribs.
Entries in hospital records qualify also for admission under the exception to the hearsay rule only if made in the regular course of the hospital’s work and for the purpose of assisting in procedures relating to its activities (e.g., diagnosis, prognosis and treatment) or in some way assisting the undertaking of the medical or surgical aspects of the patient’s hospitalization. (People v. Kohlmeyer, 284 N. Y. 366 ; Williams v. Alexander, 309 N. Y. 283 ; People v. Roth, 11 N Y 2d 80 ; Spoar v. Fudjack, 24 A D 2d 731 ; Di Russo v. Kravitz, 27 A D 2d 926, 927, affd. 21 N Y 2d 1008.)
Two separate hospitalizations for serious injuries to the same child, about one and one-quarter years apart, make it imperative that the hospital records of the first instance are necessary for the diagnosis, prognosis and treatment of a child of such tender years upon her second hospitalization since they will assist in the understanding of the medical or surgical aspects of the child’s current treatment and hospitalization. They are therefore admissible.
Prior to the fact-finding hearing on the instant petitions alleging abuse of Terry and neglect of Fred, the attorney for thej respondent parents has brought on four motions as follows:
The preponderance of evidence rule for a proceeding under article 10 of the Family Court Act is neither logical nor constitutional. Due process requires that a finding under article 10 be made only on proof beyond a reasonable doubt.
This motion is denied. Article 10 of the Family Court Act sets forth no crime or criminal penalties involved. Its objective *688 is “to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being.” (Family Ct Act, § 1011).
The Family Court has jurisdiction over proceedings under article 10, for the protection of children, notwithstanding the fact that a criminal court also has or may be exercising jurisdiction over the facts alleged in the petition or complaint. (Family Ct. Act, § 1013, subd. [b].)
The respondents hereunder are not therefore criminal defendants as would require the reasonable doubt standard of proof applicable in criminal cases or in juvenile delinquency cases in the Family Court. By definition, under the Family Court Act, an act of juvenile delinquency is one which would constitute a crime if committed by an adult. A finding of neglect or child abuse is not a crime under article 10 of the Family Court Act. If and when the respondents become criminal defendants by operation of section 1014 of the Family Court Act, which allows the Family Court to transfer any proceedings originated under this article to an appropriate criminal court or to the appropriate District Attorney if it concludes, upon a hearing, that the processes of the Family Court are inappropriate or insufficient, the respondents will be entitled to the constitutional guarantee applicable to a criminal proceeding including the standard of proof beyond a reasonable doubt. The respondents’ contention that the mere possibility of referral from the Family Court to the criminal court requires the application of reasonable doubt standard, is legally untenable.
The Legislature in adopting the new article 10 proceeding specifically provided that “Nothing in this article shall be interpreted to preclude concurrent proceedings in the family court and a criminal court.” (Family Ct. Act, § 1014, subd. [e]). The Legislature also provided transfer to and from the Family Court of any proceedings originated under article 10 to an appropriate criminal court or to the appropriate District Attorney. (Family Ct. Act, § 1014, subds. [a] and [b].) Accordingly, it is not necessary that the reasonable doubt standard of proof be required in child abuse or neglect proceedings under article 10 of the Family Court Act. Recent case law also reaffirms the preponderance of evidence rule rather than the reasonable doubt standard. The burden of proof relating to the allegations of the petition in child neglect was on the petitioner to be established by the preponderance of relevant, competent and material evidence. (Matter of Young, 50 Misc 2d 271.) The preponderance of evidence rule hence applies to the instant petition, both as to neglect and child abuse. (Family *689 Ct. Act, § 1046, subd. [b].) Due process is not violated by the application of the preponderance rule. Section 1046 (subd. [a], par. [i]) states that in a fact-finding hearing any determination that the child is an abused or neglected child must be based on a preponderance of the evidence. Child abuse and neglect cases are civil matters. Hence, the preponderance of evidence rule is legally and constitutionally sufficient. The Family Court is not bound by strict rules of New York Code of Criminal Procedure. Family Court is basically civil court and not criminal court and the rules of civil procedure (CPLR) rather than more stringent rules of criminal procedure should prevail. (Family Ct. Act, § 164 ; Matter of Walsh, 59 Misc 2d 917 ; Code Crim. Pro., § 11, subd. 7 ; Matter of Rust, 53 Misc 2d 51 ; Matter of Williams, 49 Misc 2d 154 ; Matter of Rooney, 48 Misc 2d 890.)
Furthermore, section 165 of the Family Court Act provides that, where not prescribed in the Family Court Act, methods of procedure prescribed in CPLR shall apply to the extent that they are appropriate. (Matter of Walsh, supra, p. 919.) In the instant case, we have a specific method of procedure provided by the Family Court Act, namely, section 1046 (subd. [b], par. [i]) which specifically states that in a fact-finding hearing, any determination that the child is an abused or neglected child must be based on a preponderance of the evidence. (Hirsch v. Hirsch, 53 Misc 2d 938 ; Matter of Dell, 56 Misc 2d 1017.) Due process requires that juvenile court hearings relating to neglect of children measure up to essentials of due process and fair treatment. (Matter of Cardinal v. Munyan, 30 A D 2d 444 ; U. S. Const., 14th Arndt.) Due process does not automatically require the beyond a reasonable doubt standard in neglect and child abuse cases which are civil matters and not on the juvenile delinquency side of the court where the higher standard of beyond a reasonable doubt is now required. (Matter of Winship, 397 U. S. 358.)
Respondents’ attorney brings on a motion that the privilege against self incrimination contained in the Fifth Amendment of the United States Constitution and made applicable to the States through the Fourteenth Amendment applies to a fact-finding hearing under article 10 in the Family Court. Respondents contend that the presumption created by section 1046 (subd. [a], par. [ii]) that “proof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the cate of such child shall be prima facie evidence of child *690 abuse or neglect, as the case may be, of the parent or other person legally responsible”. (Emphasis supplied).
This motion is denied. There is no violation of respondents’ rights of privilege against self incrimination. He is not required to take the stand and testify in child abuse or neglect proceedings. However, once the petitioner who has instituted child neglect proceedings under this article 10 has established existence of child’s injuries which are substantial in character while the child was in the lawful custody of his parents, then petitioner is deemed to have established a prima facie case and the burden of going forward with the proof, shifts from the petitioner to the respondents who are then required to offer satisfactory explanation concerning injuries. (Matter of Young, 50 Misc 2d 271, supra.)
If the respondents do not wish to assume this burden, this fact by itself does not make the statutory presumption unconstitutional. There is no mandatory requirement that they take the stand and testify. That would be unconstitutional. The constraint upon respondents to give testimony arises here simply from the force of circumstances and not from any form of compulsion forbidden by the Constitution. (Yee Hem v. United States, 268 U. S. 178.)
Proof of abuse by a parent or parents is difficult because such actions occur ordinarily in the privacy of the home without outside witnesses. Without satisfactory explanation by the parents, a finding of neglect against the parent will be made. This is the court’s responsibility to the child. (Matter of S, 46 Misc 2d 161 ; Matter of Young, 50 Misc 2d 271.)
Both of these cases uphold the present statutory presumption of section 1046 (subd. [a], par. [ii]) permitting an inference of neglect or child abuse to be drawn from the child’s age or condition unless the respondent parents take the stand and offer satisfactory proof to negate the prima facie case established by statute if the injuries to the child are not satisfactorily explained. It may be a difficult decision for the respondents and their attorneys. It is a question of procedure and legal options for the defense, not one of the constitutionality of incrimination. The witness is not exonerated from answering merely because he declares that in doing so he would incriminate himself. It is for the court to say whether his silence is justified. (Rogers v. United States, 340 U. S. 367 ; Canudo, Evidence, Laws of New York, p. 58.)
Silence is not always golden. The court seeking the ascertainment of truth, in a child abuse and neglect case is confronted *691 with a battered child with very serious injuries, an increasingly critical problem. (Matter of 8, 46 Misc 2d 161, 162, supra.)
The respondents have a right to stand mute. If they do so, however, in this type of case, they run the great risk of having the prima facie case established by a preponderance of the evidence stand against them with finality, particularly as in most cases of this nature, there are no outside witnesses.
The attorney for the respondents brings on a third motion, that since the charges against the respondents can form the basis of a subsequent felony prosecution by direct operation of the Family Court hearing, respondents are entitled to a trial by jury as a matter of constitutional due process.
This motion is denied. The constitutional right to a jury has been held by the United States Supreme Court to apply to cases where persons are charged with crime punishable by more than six months. (Baldwin v. New York, 399 U. S. 66.)
A proceeding under article 10 of the Family Court Act is a civil proceeding and there are no penal provisions such as imprisonment for more than six months involved. In fact, no crime is involved at all. If and when the Family Court refers a petition involving child abuse or neglect to a criminal court or to the District Attorney, the possibility would exist that imprisonment for more than six months would result but only after indictment, arraignment and trial by jury. None of these procedures could happen under article 10 and is precisely the reason why section 1014 of the Family Court Act allows transfer of child abuse and neglect proceedings to and from the Family Court and why subdivision (c) of section 1014 allows concurrent proceedings in the Family Court and a criminal court. Hence, the constitutional right to a jury trial is preserved for a respondent in an article 10 of the Family Court proceeding who may become a defendant in a criminal court from the same allegations or charges arising in the Family Court petition. In that contingency, his right to a jury trial is guaranteed. There is no such right initially under article 10 of the Family Court Act.
The right to a trial by jury is not synonymous with due process of law nor does the denial of a trial by jury deprive a person of due process of law. (Palko v. Connecticut, 302 U. S. 319.) With respect to the Sixth Amendment, the within proceeding is not criminal in nature. The statute (Family Ct. Act, art. 10) is not punitive. It is designated to rescue the child. Its object is not to punish parents but to safeguard children. This purpose is inconsistent with the granting of jury trials. To require a jury trial would bring a good deal more formality to the court without demonstrating that it would be better fact-finding *692 process than trial before a Judge. Even in cases of juvenile delinquency where the penalty can be confinement in a State institution and where the proceeding is quasi-criminal, a trial by jury is neither constitutionally required nor desirable. (Matter of Walsh, 64 Misc 2d 293 ; Matter of Gault, 387 U. S. 1 ; Matter of Winship, 397 U. S. 358, supra ; Matter of D. [Daniel] 27 N Y 2d 90.)
It is well settled that where children are concerned, the court functions as parens patriae to do what is in the best interest of children. (Finlay v. Finlay, 240 N. Y. 429 ; Matter of Bachman v. Mejias, 1 N Y 2d 575.) The irreparable harms wreaked upon children in cases such as these are very real. Were the State not to enact a statute for the protection of children, it would be delinquent in its obligation and duties. (Matter of Walsh, supra, p. 294.)
A jury trial is not required by statute for a determination by the Family Court that a person is a narcotic addict. (Matter of Three “John ” Children, 61 Misc 2d 347, supra.) Likewise, by analogy, under the facts of this case, child abuse with no penal provisions even if a finding is made, does not require a jury trial as a matter of constitutional due process.
As for the instant petitions involving child abuse and neglect, a long fact-finding hearing was conducted over several days, including expert testimony by doctors and psychiatrists who were active in the case from its inception. The respondent parents took the stand themselves, after the various motions described above, brought by their attorney, had been denied.
The respondent parents steadfastly claimed under oath that they did not know how their child Terry had sustained such serious injuries. A catalogue of these injuries from the expert inedical and psychiatric testimony, color photographs and hospital records revealed that the child Terry was acutely ill with pressure on the brain. There was bleeding in the head, compatible with trauma and malformation or defects of birth ruled out. The child has a cyst on the brain; brain damage is evident with structural lesions demonstrable. Trauma is the sustaining of .injury by external force, not of internal or natural causes. Expert medical testimony stated that the injuries sustained by the child Terry are not consistent with a simple fall. The extent of the injuries would rule this out. In answer to a question by defense counsel, the chief medical expert testified that the injuries to the brain would be compatible with the child being hit on the head with a baseball bat.
It was also testified to that there were human bites distributed over the child’s body which were black and then turned red. *693 Rash and skin disorders were ruled out because of the peculiar distribution over the entire body.
The child Terry is still in critical condition in Maimonides Hospital where she was just brought by her parents in an ambulance with the police on November 6, 1970. The prognosis is extremely guarded. None of this expert medical testimony or the hospital records of the serious condition of the child was effectively rebutted.
The hospital records, the medical history including reports filed pursuant to section 383-a of the Social Services Laws and under the Family Court Act (§ 1046, subd. [a], par. [iv]) and section 1038 and testimony by psychiatric experts who interviewed and treated respondents reveal that the mother is a Yugoslavian illiterate while her husband is an Albanian illiterate. Both were recent immigrants to this country and did not speak English. All court hearings except one were conducted with official Albanian interpreters present except in one instance where, however, the attorney for the respondents was present, a permissible procedure under section 1042 of the Family Court Act. Testimony of the psychiatrists from their reports and memory revealed that the respondent mother, a Moslem, went with her husband to a Moslem shrine in Michigan to “ get the curse on the baby Terry removed ”. The respondent mother when confronted with the nature of the child’s injuries and the documented medical, neurological and radiological evidence insisted that the child was fine until the day of hospital admission when she woke up sick; that the bites were inflicted by her two and one-half-year-old brother and that the prior injuries to the child about 15 months ago were due to being pushed off a table by the two and one-half-year-old. She contended Yugoslavian children bite, as an explanation for the bite marks distributed over the child Terry’s body. The respondent mother also contended she was out of the room when the baby Terry fell off the table. When told that the child Terry was blind and comatose, the respondent-mother claimed that Terry was fine and ready to go home which led the examining psychiatrists to conclude that she suffered from severe depression with possibility of delusions, although she denied hallucinations, suicidal and homicidal ideation.
Her husband, the respondent father, was employed as a porter He testified he left home to go to work as a porter at 6:00 a.m. on November 6, 1970 and when he called his wife later, as was his custom, she informed him the child Terry was very sick and to come home right away. When he arrived home, the baby was rushed to the hospital. The respondent mother never left *694 the home without her husband and when he was away, she stayed indoors at all times, presumably in deference to the Moslem custom in her native land. She did not even know how to contact him by telephone causing a delay of some six hours from when she first discovered the child was seriously ill at 8:00 a.m. until, her husband arrived home at 2:00 p.m. Nor did she have the presence of mind to call a neighbor to summon emergency aid or assistance.
Both parents testified that three days before November 6, 1970 when the child became seriously ill, the baby Terry was playing in the kitchen and a tricycle fell on her face, causing slight injuries. Both also testified that they remonstrated with their son Fred, telling him not to hit his baby sister. No other explanation was ever offered as to what happened to Terry during the intervening three days when she woke up seriously ill and was rushed to the hospital later in the day. No plausible explanation of accidental means was ever offered to explain the injuries. There was no testimony that the child was ever out of the custody of the parents and thus no third party could have inflicted the injuries unless they were caused by Fred. The mother had previously explained to the psychiatrists and hospital staff that the previous injury to Terry had been caused by her brother’s pushing her off the table. There was no testimony that the child fell from a very high place such as out of a window or down a long stairway that could conceivably cause such serious injuries. Even if the child Fred beat his sister constantly as to cause such injuries, there was no testimony offered by the parents to prevent such beatings.
After a careful analysis of the above facts and circumstances and the credible evidence adduced from all the testimony, there is ample proof of child abuse by the respondent parents as to Terry and neglect as to Fred for the following reasons:
1. The child Terry is seriously injured, blind, comatose and has a damaged brain that may yet even cause death.
2. The nature and extent of the injuries indicate a badly battered and beaten child.
3. Although the proof fails to point with certainty to one or both parents as the perpetrators of the abuse, the doctrine of res ipsa loquitur applies — the condition of the child speaks for itself, thus permitting an inference of abuse to be drawn from proof of the child’s age and condition and that the latter is such as in the ordinary course of things, does not happen if the parent who has the responsibility and control of an infant is protective and nonabusive. There is no satisfactory explanation by the parents. (Matter of S, 46 Misc 2d 161, supra; Paulsen, The *695 Legal Framework of Child Protection, 66 Col. L. Rev., April 1966, 679, 699.)
4. The facts of the case fit exactly under section 1046 (subd. [a], par. [ii]) of the Family Court Act “proof of injuries sustained by a child * * * by reason of the acts or omissions of the parent * * * shall be prima facie evidence of child abuse or neglect ”.
5. The burden of proof has been met by the petitioner (prima facie case); a preponderance of the relevant, competent and material evidence has been shown. (Matter of Young, 50 Misc 2d 271, supra ; Matter of Three “ John ” Children, 61 Misc 2d 347, supra.)
6. The respondents have not overcome the prima facie case and they have not offered satisfactory proof or explanation of the child’s injuries. (Matter of Young, supra.)
7. On the basis of ‘1 totality of circumstances ’ ’ and the strong links forged in the chain of evidence including circumstantial evidence which is legally admissible evidence, and since there was no rebuttal of the prima facie case, the finding of child abuse against the parents as to the child Terry and neglect as to the child Fred must stand with finality. The facts here upon which circumstantial evidence is based have been established by convincing evidence which is not too slight, remote, uncertain or highly conjectural to have a legitimate bearing upon the facts which are at issue. The evidence here is inconsistent with respondents’ innocence and excludes to a moral certainty every other reasonable hypothesis except the finding of child abuse and neglect. (Canudo, Laws of New York, Real and Circumstantial Evidence, pp. 127, 128 ; People v. Weiss, 290 N. Y. 160 ; People v. Cleague, 22 N Y 2d 363 ; People v. Harris, 209 N. Y. 70 ; People v. Feldman, 299 N. Y. 153 ; Bashaw v. Bouvia, 14 A D 2d 640.)
The quality of the evidence here, based on the strong statutory presumption, not rebutted or overcome by the respondents, is not strained or colored and well within the credible evidence based on all the facts and circumstances of the case. In child protective proceedings, the law must be practical and realistic— standards well met in the ascertainment of truth or serious attempts thereat by the long fact-finding hearing in this case. The law of neglect and child abuse under the new article 10 of the Family Court Act, does not require a legal straight jacket where all the evidence must fit into predetermined slots of minute •exactitude. No branch of the law is a perfect science. The statute should not prescribe the rights of society, angrily offended by increases in child abuse and neglect. This (Family Ct. Act, *696 art. 10) is an enlightened law for the greater and more effective protection of children, their health, safety and welfare. It is not a vehicle for recrimination against parents or their constitutional rights.
As to the neglect petition concerning the infant baby Mary, born to the respondent mother on March 20, 1971, there is a finding of neglect under section 1028 of the Family Court Act after a hearing. This is based on the exercise of discretion of the Family Court as parens patriae to avoid an imminent risk to the child’s life or health in view of the findings on the other petition of child abuse and neglect against the other children. (Family Ct. Act, § 1028, subd. [b] .)
Attorney for the respondents argues that not one scintilla of evidence has been shown to indicate abuse or neglect on the newborn baby and to remove the child is a violation of due process, and a violation of their constitutional rights.
The welfare of the child is objective in neglect cases; inquiry is addressed to whether the child’s welfare requires his removal from his home. (Matter of Blaine, 54 Misc 2d 248.)
Section 1012 (subd. [f], par. [i], subpar. [B]) foresaw the dangers in the instant neglect petition, that the new-born child would be in imminent danger because of assaultive parents, by providing the words “ora substantial risk thereof ’ ’ in describing parents who fail to exercise a minimum degree of care. The legislative intent here is clear to guard against a child not only whose physical, mental or emotional condition has been impaired but “ is in imminent danger of becoming impaired ” (Family Ct. Act, § 1012, subd. [f], par. [i]; emphasis supplied).
There has already been a finding of neglect against respondent parents on child Terry on an original child abuse petition. After a long fact-finding hearing just concluded, the respondents have been held to have abused the same child Terry (a finding of child abuse). The record is therefore sufficient to make the conclusion inescapable that the new-born female baby (Mary) is likely to suffer serious harm from improper guardianship. The record is also clear that in both findings of neglect and child abuse, a female child Terry has been involved. The new-born child is also female. The psychiatrists from Bellevue who testified indicated the Moslem belief of the respondent mother (part of the hospital record revealed to them) favored the male born. There is no direct proof in the record however that this fact alone had anything to do with the serious injuries suffered by the female child Terry. The record is also clear that the male child Fred has been unharmed and never assaulted by the parents at any time. The mother was acquainted with this Moslem *697 custom in her native Yugoslavia and there had been some evidence in her own family history as relayed by her to the hospital authorities. There is ample proof in the record that both parents are ignorant of proper child care and supervision, and serious injuries have occurred to the child Terry as a direct result of the respondents ’ acts of omission and commission. At the same time there is some direct uncontradicted testimony that the parents were either unable or unwilling to control the male child Fred in the household, allowing him to bite his sister severely, to push her off the table causing the fracturing of Terry’s ribs and on mother’s own testimony that she was out of the room when this happened. These are warning signs that this court or any court faced with a similar problem could not safely ignore.
Section 1046 (subd. [a], par. [i]) of the Family Court Act states that proof of the abuse or neglect of. one child shall be admissible evidence on the issue of neglect or. abuse of any other child of, or the legal responsibility of the respondent. Experience has shown that a parent who abuses one of his children is likely to abuse his other children. This has become a rule of evidence in child protective proceedings. Accordingly, when an abused child has been removed by a Family Court order from its parents, a social welfare worker or other proper petitioner may file a neglect petition against such parent for the removal of his other children, alleging that such parent is likely to abuse them too. Such petition will not be dismissed as legally insufficient. (Matter of Abeena H., 64 Misc 2d 965.)
There is a far more dangerous pattern of neglect and child abuse established in the instant application than in Matter of Abeena H. (supra). Already faced with one finding of neglect plus a new finding of abuse on the same female child, there is no doubt in the court’s mind that the removal of the new-born female child from the home of her parents is not only necessary, proper and legal but imperative under all the facts and circumstances of all the petitions before the court, on all of which there have now been findings.
In neglect proceedings, the court’s duty is to determine whether, despite any past deficiency, children are at the time of the hearing suffering or likely to suffer from neglect. It is the function of the trial court to determine whether neglect exists. (Matter of Vulon Children, 56 Misc 2d 19.)
In child protective proceedings, by logical extension of the doctrine, it is also the function of the trial court to determine not only whether neglect or far more serious child abuse exists but that it is likely to exist. The court sitting as parens patriae cannot be limited in these types of proceedings to conditions *698 already existing or which has happened in the past. Indeed this court could not be fulfilling its proper function if it limited its necessarily broad sweeping horizon of child health, safety and welfare to the past and present situation only when the warning flags from the storms of abuse and neglect are still flying, and to borrow and paraphrase a familiar saying from another branch of the law, there is abundant evidence of a “ clear and present danger ” to children. (Schenck v. United States, 249 U. S. 47, 52.)
The due process clause requires that juvenile court hearings relating to neglect of children measure up to the essentials of due process and fair treatment. (Matter of Cardinal [Munyan], 30 A D 2d 444.)
Acting in the best interests and welfare of children is not a denial of due process. Bather and what is more important, it is the highest form of due process for neglected and abused children and those likely to become so because of assaultive tendencies of parents already established including mistreatment of children in the form of physical assault and acts of omission involving improper guardianship and supervision. The action taken hereunder in removing the new-born child Mary from the home is based on probable cause, not mere suspicion.
The child Fred is declared to be a neglected child on the same legal reasoning as above set forth as to the child Mary. In addition, there is some uncontradicted evidence that the child Fred was allowed to beat and severely bite his baby sister Terry. According to the mother’s statements the child Fred pushed the child Terry off a table causing her severe injuries. The. mother testified she was out of the room at the time. There is no direct evidence, however, that the child Fred was ever abused by his parents. There is ample evidence, however, of improper supervision and guardianship under the statute by respondent parents in their inability to control Fred resulting in serious injuries to Terry. (Family Ct. Act, § 1046, subd. [a], par. [i] ; § 1012, subds. [e] and [f] ; Matter of Blaine, 54 Misc 2d 248, supra ; Matter of Abeena, H., 64 Misc 2d 965, supra.)
Because of the fact-finding hearings establishing neglect and abuse upon the child Terry and the serious injuries suffered by this child, this case is referred to the District Attorney of Biehmond County in accordance with section 1014 as to whether or not any violation of the Penal Law of New York State is involved (assault, etc.). The Clerk of the court is directed to make all files in this matter available for examination to the District Attorney of Bichmond County and/or his authorized representatives.
The Probation Department is ordered to conduct immediately a complete and thorough predispositional hearing investigation *699 as well as adjourned dispositional investigation on the original petition in which there was a finding of neglect on child Terry. Full reports should be available to this court for purposes of dispositional hearing on May 4,1971 on all of the above petitions.
All of the children are continued on remand as heretofore to the Commissioner of Social Services until May 4, 1971, the date of the dispositional hearing. The child Terry is in Maimonides Hospital and the children Fred and Mary at the Angel Guardian Home.