275 N.J. Super. 173 (1994)
645 A.2d 1213
NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF-RESPONDENT,
v.
S.S., DEFENDANT-APPELLANT, AND V.E., DEFENDANT, IN THE MATTER OF N.S. AND D.S., MINORS.
Superior Court of New Jersey, Appellate Division.
Submitted February 16, 1994.
Decided July 15, 1994.
*174 Before Judges KING, ARNOLD M. STEIN and A.A. RODRIGUEZ.
*175 Susan L. Reisner, Acting Public Defender, attorney for appellant S.S. (Olivia Belfatto Crisp, Designated Counsel, of counsel and on the brief).
Susan L. Reisner, Acting Public Defender, attorney for N.S. and D.S. (Caridad D. Argote-Freyre, Assistant Deputy Public Defender, filed a letter brief as law guardian for minors N.S. and D.S.).
Deborah T. Poritz, Attorney General, attorney for respondent (Mary C. Jacobson, Assistant Attorney General, of counsel; Mark Singer, Deputy Attorney General, on the brief).
The opinion of the court was delivered by A.A. RODRIGUEZ, J.S.C. (temporarily assigned).
Defendant S.S. challenges on federal constitutional grounds the application in this case of the burden-shifting doctrine announced in In the Matter of D.T., 229 N.J. Super. 509, 552 A.2d 189 (App.Div. 1988), which requires defendant to prove her non-culpability in the abuse of her daughter. Id. at 517, 552 A.2d 189. We affirm.
S.S. is the mother of two girls, N.S., age four and D.S., age six. N.S. suffers from Turner's Syndrome, a congenital abnormality, and also has a fragment of an extra chromosome in her genes. As a result, she cannot stand, walk or speak and spends most of her time lying on the floor or in her crib.
Shortly after S.S. separated from the children's father, she began dating defendant V.E. Later, she and her daughters moved in with him. V.E. assumed a role in caring for the children. He diapered, bathed and fed N.S. Because S.S. and V.E. worked rotating shifts as casino card-dealers, they regularly left the children with S.S.'s parents, often for several days at a time.
According to S.S., on November 20, 1991, N.S. awoke cranky and irritable. S.S. noticed that the child's knee was swollen and immediately brought her to her pediatrician, Doctor Amir. He *176 recommended x-rays which revealed fractures to N.S.'s right femur and right and left tibias. The child was placed into a full hip cast and DYFS was notified.
Bruce Jenkins of DYFS' Special Response Unit interviewed S.S. and V.E. The two stated that they noticed the knee swelling while changing N.S. but had no explanation for the cause of her other injuries. Jenkins also interviewed N.S.'s maternal grandfather who reported that while the children were at his house the week before, D.S. had tripped over her sister and fell on top of her. However, because N.S. did not appear to be more than slightly injured at the time, her grandfather did not speak of the occurrence until after N.S.'s fractures were discovered. This incident was the family's only explanation for N.S.'s injuries.
Jenkins recommended that DYFS conduct a follow-up investigation. After N.S. was released from the hospital to the care of her mother, a DYFS caseworker repeatedly called, wrote and visited S.S.'s home in an effort to see N.S. However, the caseworker was never able to examine the child.
In March 1992, N.S. was again rushed to the hospital, allegedly because she had stopped breathing. An examination revealed numerous serious injuries. N.S. had a fractured right clavicle with the surrounding area was visibly swollen; a partially-healed and previously unreported fracture to her right tibia; a partially-healed contusion on her brain; swelling and bruises about her forehead and nose and excoriations around her mouth. In addition, N.S. had vaginal lacerations and rectal tearing.
DYFS was immediately notified. Jenkins requested assistance from the Atlantic County Prosecutor's office. When interviewed, V.E. told Jenkins that N.S. had not been injured recently except for the week before when she hurt her shoulder and sustained a black eye after falling out of bed. V.E. said that instead of seeking medical attention, he and S.S. wrapped N.S.'s arm in an ace bandage. V.E. continued that he first realized N.S. had a serious problem early that morning when he noticed that her eyes were glazed and unresponsive and her heartbeat faint. As he *177 tended to N.S., she began to turn blue. V.E. immediately summoned S.S. and the couple resuscitated the child before transporting her to the emergency room. V.E. had no explanation for N.S.'s numerous other injuries. S.S. offered a similar version of these events and was also unable to explain the cause of N.S.'s injuries.
DYFS moved for preliminary removal and on the same day received immediate temporary custody of both N.S. and D.S. DYFS also filed a verified complaint against S.S. and V.E., alleging that N.S. was an abused and neglected child pursuant to N.J.S.A. 9:6-8.21c, and seeking supervision of N.S. and D.S. pursuant to N.J.S.A. 30:4C-12.
Christian Hansen, M.D., testified for DYFS at the fact-finding hearing, that because of the manner in which her bones broke very forceful trauma must have caused N.S.'s fracture. Dr. Hansen opined that it was very unlikely that D.S.'s fall onto her sister could have caused the fractures. As to N.S.'s March 1992 injuries, Dr. Hansen reasoned that there was little chance N.S. could have broken her clavicle from a fall from a bed of normal height. He concluded to a reasonable degree of medical certainty that "we are looking at a child who has been maltreated and the injuries that we are seeing are the result of abuse and not accidental."
Martin Finkel, M.D., an expert in evaluating sexual abuse in children, testified that N.S.'s vaginal lacerations and rectal tearing were intentionally inflicted by some object directed at the area, such as an adult finger. He testified that, "It's not the type of injury seen with normal caretaking practices." He further testified that such injury could not be sustained by falling from a bed.
At the conclusion of DYFS's case, S.S. and V.E. moved to dismiss the complaint for failure to make out a prima facie case of abuse or neglect. The motion was denied. The judge found that N.S. was indeed abused and neglected as defined in N.J.S.A. 9:6-8.21c and, pursuant to In re D.T., shifted the burden to S.S. and V.E. to prove their non-culpability for this abuse.
*178 After S.S. and V.E. testified, the judge found that both had caused and/or permitted the abuse and neglect of N.S. The judge further determined that D.S. was at substantial risk of abuse. He continued custody of D.S. with her maternal grandparents. N.S. remained in foster care for medically-needy children.
S.S. appeals on the following grounds: (1) DYFS failed to make a prima facie case for abuse and/or neglect of N.S.; (2) the burden-shifting requirements of In re D.T. violate S.S.'s privilege against self-incrimination as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and (3) the photographs taken of N.S. at the time of her admission to the hospital should not have been admitted into evidence.

I
There is no merit to S.S.'s contention that DYFS failed to make out a prima facie case. Viewing the evidence in a light most favorable to DYFS and granting the agency the benefit of all reasonable inferences drawn from that evidence, there was substantial testimony from which the judge could conclude that N.S. was the victim of physical and sexual abuse and neglect. See Dolson v. Anastasia, 55 N.J. 2, 5-6, 258 A.2d 706 (1969) and Rova Farms v. Investors Ins. Co. of America, 65 N.J. 474, 483-484, 323 A.2d 495 (1974).

II
Defendant next argues that burden-shifting procedures set forth in In re D.T., violated her constitutional privilege against self-incrimination under the Fifth and Fourteenth Amendments. She contends that she was compelled to testify in order to avoid an adverse determination at the hearing. We disagree.
At the outset we note the fact that defendant failed to object at the hearing either to testifying generally or to answering any specific question. However, because of the constitutional nature of her challenge to In re D.T., the absence of any reported cases *179 in New Jersey and the need to provide guidance to trial courts, we decide this case on substantive rather than procedural grounds.
The Fifth Amendment literally provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. However, our courts have since determined that, "[t]he privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." McCarthy v. Arndstein, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158, 161 (1924). Thus, the Fifth Amendment privilege against self-incrimination grants to an individual the right, "not to answer official questions put to [her] in any ... proceeding, civil or criminal, formal or informal, where the answers might incriminate [her] in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274, 281 (1973).
It is difficult to marshal direct evidence of parental abuse and neglect because of the closed environment in which the abuse most often occurs and the limited ability of the abused child to inculpate the abuser. Consequently, in In re D.T., supra, 229 N.J. Super. at 517, 552 A.2d 189, we held that when a limited number of persons have access to or custody of an infant during the period when an abuse concededly occurs, the burden shifts to those persons to come forward and provide evidence to establish their non-culpability for that abuse.
The question in this context is whether In re D.T.'s burden-shifting doctrine compels defendant to testify to matters which may incriminate her. There are no New Jersey cases on point. A review of New York cases, a state where child abuse and neglect laws mirror New Jersey's Title 9, reveals two well-reasoned opinions on the issue.[1]
*180 In In re S., 66 Misc.2d 683, 322 N.Y.S.2d 170 (Fam.Ct. 1971), a Fifth Amendment challenge was made to a burden-shifting rule virtually identical to that of In re D.T.[2] The court held:
There is no violation of respondents' rights of privilege against self-incrimination. He is not required to take the stand and testify in child abuse or neglect proceedings. However, once the petitioner... is deemed to have established a prima facie case and the burden of going forward with the proofs shifts, ... respondents ... are then required to offer [a] satisfactory explanation concerning [the] injuries.
If the respondents do not wish to assume this burden, this fact by itself does not make the presumption unconstitutional. There is no mandatory requirement that they take the stand and testify. That would be unconstitutional. The constraint upon respondent to give testimony arises here simply from the force of circumstances and not from any form of compulsion forbidden by the Constitution....
It may be a difficult decision for the respondents and their attorneys. [But] it is a question of procedure and legal options for the defense, not one of the constitutionality of incrimination....
The respondents here have a right to stand mute. If they do so, however, in this type of case, they run the great risk of having the prima facie case ... stand against them with finality....
[Id. 322 N.Y.S.2d at 177-178].
Seven years later in In the Matter of Roman, 94 Misc.2d 796, 405 N.Y.S.2d 899 (Fam.Ct. 1978), where a woman's live-in boy-friend allegedly sexually abused her sixteen-year-old daughter, the same court observed that:
[A]s in a criminal case, the decision to testify or not in the presentation of a defense remains in the unfettered discretion of the Respondent. The decision is a tactical, not a compelled one. A defense to the allegations may be established by alternative methods which do not require the Respondent's testimony.
[Id. 405 N.Y.S.2d at 904].
*181 We find these decisions persuasive in both their analyses and conclusions and hold that In re D.T., supra, 229 N.J. Super. 509, 552 A.2d 189, does not violate the Fifth Amendment's privilege against self-incrimination by requiring certain defendants to demonstrate their non-culpability in the found abuse of a child in their custody.
S.S. was one of a limited number of people in control of N.S. when she was injured. Having determined that the State's proofs constituted prima facie evidence of abuse, the court correctly ruled that the burden shifted to her to exculpate herself. S.S.'s oral testimony was simply one means of several available to her to demonstrate nonculpability. She was free to choose silence.

III
Finally, we reject S.S.'s argument that admission of the photographs taken of N.S. in the emergency room were inflammatory and unduly prejudicial and should have been excluded under N.J.R.E. 403. These photographs were moved into evidence without objection. The admission of the photographs was not error, let alone plain error. R. 2:10-2.
Admission of photographic evidence, properly proved and having probative value, even if somewhat inflammatory, in color and only cumulative, is mainly within the discretion of the trial judge, whose ruling will not be overturned save for abuse, as where logical relevance will unquestionably be overwhelmed by the inherently prejudicial nature of the particular picture.
[State v. Smith, 32 N.J. 501, 525, 161 A.2d 520 (1960), cert. denied, 364 U.S. 936, 5 L.Ed.2d 367, 81 S.Ct. 383 (1961)].
These pictures which portrayed the physical condition of N.S. were highly relevant. Moreover, this was a bench, not a jury trial. Their prejudicial impact, if any, was not likely to sway the finder of fact in this case.
Affirmed.
NOTES
[1] See N.Y. Family Court Act, § 1046a(ii); N.J.S.A. 9:6-8.46a(2).
[2] In In the Matter of Young, 50 Misc.2d 271, 270 N.Y.S.2d 250, 253 (Fam.Ct. 1966), the Family Court recognized the difficulty in obtaining proof against specific individuals in child abuse cases. It consequently held that, "[o]nce the Petitioner has established the existence of injuries sustained by the child which are substantial in character while the child was in the lawful custody of his parents or other person legally responsible for his care, then Petitioner is deemed to have established a prima facie case and the burden of coming forward with proof shifts from the Petitioner to the Respondent who is then required to offer a satisfactory explanation concerning these injuries." Ibid.