**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0113-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOHN P. FRATTELONE,

     Defendant-Appellant.

_____

Argued December 5, 2023 – Decided March 25, 2024

Before Judges Sumners and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Municipal Appeal No. MA 21-07.

Mitchell Jonathan Ansell argued the cause for appellant (Ansell Grimm & Aaron, PC, and Kingston Coventry LLC, attorneys; Mitchell Jonathan Ansell and Deborah Lynn Gramiccioni, of counsel and on the briefs).

William Kyle Meighan, Supervising Assistant Prosecutor, argued the cause for respondent (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, on the brief).

PER CURIAM

Defendant John P. Frattelone appeals his Law Division trial de novo conviction for harassment, N.J.S.A. 2C:33-4(a), arising from his conduct towards one of his employees. We affirm.

I.

Defendant is an oral maxillofacial surgeon who owns and operates three dental offices throughout New Jersey. M.V. (Mary),[1] one of defendant's dental assistants, filed a complaint with the Barnegat Township Municipal Court alleging defendant harassed her on three occasions in the township.

At trial, Mary, the State's only witness, testified about defendant's misconduct. The first incident occurred when Mary was telling a co-worker about her sore mouth and defendant, while standing behind the co-worker, made gestures that resembled oral sex, suggesting that caused Mary's ailment. Two days later, Mary was suctioning a sedated patient's mouth during surgery when defendant said to her, "you like sucking, huh[?]" The last incident occurred almost a month later. Mary was in the office's changing area removing her jacket when defendant asked her, "are you wearing a lace bra and thong panties to

_____

[1] We use initials to protect the privacy of the victim. <u>See</u> <u>R.</u> 1:38-3(c)(12).

match [the black] shirt [you're wearing?]" Mary testified she "looked at him and said[] no, with a face of disgust[,] and then left."

About a month prior to filing her municipal court complaint, Mary reported these incidents to the Barnegat Township police. She also reported these incidents and a few others that allegedly occurred in defendant's Lincroft Township office, located in Middletown Township, to the Middletown Police Department.

At the conclusion of the State's case, defendant moved for a judgment of acquittal, arguing Mary's testimony was not credible considering the pending civil lawsuit she filed against him and his practice, she received treatment from defendant after the alleged harassment, as well as the year delay in filing her municipal court complaint. Defense counsel further argued the State failed to prove he intended to harass Mary, explaining:

> By the State's own admission and giving them every favorable inference, . . . defendant's admission . . . was playful. So even if [the court] take[s] everything that [Mary] said [as] true, . . . defendant's initial reaction— his spontaneous reaction when confronted about this harassment was it was playful, it was not intended to harass[,] and he actually said I didn't know it bothered [Mary].
>
> [(Emphasis added).]

The municipal court denied the motion, finding the State "made a per se [showing of defendant's] violation of [N.J.S.A.] 2C:33-4(a)." Considering the parties' proofs and arguments, the court ruled:

> It's necessary that pursuant to <u>State v. Locurto</u>,[2] that the court make credibility findings as to all parties testifying in front of the court. We've only had one witness, we've had one witness, [Mary]. . . .
>
> . . . .
>
> I found her testimony to be credible. I found her testimony to be believable[,] . . . detailed and [it] to ma[d]e sense to the [c]ourt. [It] [d]id not sound by any stretch of the imagination to be fabricated testimony.
>
> . . . .
>
> [D]efendant himself claimed that he thought that his communications to [Mary] were <u>playful.</u> That's the language [Mary] used, that's the language that the defense relied upon in indicating that this can't be harassment or doesn't rise to the level of harassment because . . . defendant said it was <u>playful</u> or he thought it was playful, or he asserted that it was <u>playful</u>.
>
> Just because he says it, does not make it so.
>
> [(Emphasis added).]

Defendant then testified on his own behalf. He denied mocking oral sex, stating "[he] would never do a gesture [like] that." He said he could not "recall"

---

[2] 157 N.J. 463, 474 (1999).

the sucking comment, "[b]ecause [he] never spoke like that." As for the undergarment incident, defendant claimed:

> I was working at my computer, [Mary] came in at the end of the day to change the way she always did, she engaged me in conversation as she did every time she walks into my office. I was working at my computer as I always did when I wasn't treating patients, and she called my name and I turned around, and she had taken off her scrub jacket and was wearing a t-shirt and she [then] slung her pocketbook over her neck, which consequently pulled her shirt down exposing her bra and her upper breast[.] . . . I looked at her and I said you might want to fix that.

Following the parties' written summations, the municipal court issued an oral decision finding defendant guilty of harassment. The court noted Mary's failure to report the incidents to "[defendant] or [his] . . . wife"[3] did not diminish her credibility, as defendant did not put her in a reasonable position. Additionally, neither Mary's pending civil lawsuit against defendant nor her continued employment and treatment from defendant after the alleged harassment "convince[d] the [c]ourt in any fashion that [the harassment] didn't happen." The court further reasoned defendant's testimony amounted to "an admission" that something happened, "but it's not what [he is] accused of doing,"

---

[3] Defendant testified his wife was the office manager. Mary testified she did not know what position defendant's wife held.

A-0113-22

and that "if it did happen, it was playful." Defendant appealed the conviction to the Law Division.

After a trial de novo, the Law Division judge issued an order and well-reasoned seventeen-page written opinion affirming defendant's conviction. The judge found the municipal court applied the correct legal standard and defendant's guilt was based "solely on the testimony presented on the record." The judge also found, that as described "in [State v. Hoffman, 149 N.J. 564, 577 (1997)], the lack of legitimate purpose for the communications [with Mary] support[] a finding that [d]efendant had the purpose to harass." The judge reasoned, "the municipal court, as the fact-finder, was entitled to use its common sense and experience to find that, viewed objectively, [d]efendant's explanation was disingenuous" and dismissed the contention his conduct was playful. As for defendant's contention the municipal court's findings in denying his motion for acquittal created "undue pressure" on him to testify, the judge held the findings, at most, "may have influenced [his] decision to testify in a colloquial sense," but he was not "unduly pressured or coerced into waiving his" right to remain silent.

Finally, the judge rejected defendant's argument that the Barnegat municipal prosecutor's failure to provide him with the Middletown police report

constituted a discovery violation depriving him of the opportunity to impeach Mary. Applying the municipal court discovery rules, R. 7:7-7(b)(7)-(9), and Brady v. Maryland, 373 U.S. 83, 87 (1963), the judge determined no discovery violation occurred given the prosecutor's certification that "the Middletown Township police report was not in his possession, custody or control," and nothing suggested the prosecutor "knew about the . . . police report at the time of [d]efendant's discovery request or before trial." The judge also determined defendant's contention that Mary's statement to the Middletown police regarding the date and location of the undergarment comment contradicted her testimony was not material to his defense. The judge stressed Mary's testimony about the two other incidents was consistent and "even after vigorous challenges to [her] credibility on cross-examination and in summation[], the municipal court believed her testimony over [d]efendant's." Considering the totality of the record, the judge held "there is no reasonable probability that the result of the proceeding would have been different had [d]efendant obtained the Middletown police report before trial.

A-0113-22

II.

Before us, defendant contends:

POINT I

THE CREDIBLITY DETERMINATIONS AND ERRONEOUS RULINGS BY THE LOWER COURTS WERE TANTAMOU[N]T TO VIOLATING THE CONSTITUTIONAL RIGHT AGAINST COMPULSIVE TESTIMONY [AND] ULTIMATELY[] A FAIR TRIAL UNDER THE UNITED STATES CONSTITUTION AND THE CONSTITUTION OF THE STATE OF NEW JERSEY.

POINT II

THE RECORD BELOW LAC[K]S SUFFICIENT CREDIBLE EVIDENCE TO SUSTAIN A CONVICTION OF HARRASMENT, N.J.S.A. 2C:33-4, BEYOND A REASONABLE DOUBT. ACCORDINGLY, THE FAILURE ON PART OF THE MUNICIPAL COURT AND LAW DIVISION TO ENTER A JUDGMENT OF ACQUITTAL IN THIS MATTER WAS CLEAR ERROR.

POINT III

THE MUNCIPAL PROSECUTOR'S FAILURE TO PRODUCE THE COMPLAIN[T]ANT[']S CONFLICTING STATEMENTS PRIOR TO HER TESTIMONY DEPRIVED THE DEFENDANT-APPELLANT THE OPPORTUNITY TO CROSS-EXAMINE HER ON MULTIPLE INCONSISTENCIES, AND THUS DEPRIVED THE DEFENDANT-APPELLANT OF A FAIR TRIAL.

We address defendant's arguments in the order presented.

8

A-0113-22

## A.

Defendant contends the municipal court's finding that Mary gave credible testimony as a basis for denying his motion for acquittal compelled him to waive his right to remain silent. We disagree.

The Fifth Amendment to the United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. New Jersey similarly guarantees the right against self-incrimination. N.J.R.E. 503; State v. S.S., 229 N.J. 360, 381-82 (2017). "[T]he touchstone of the Fifth Amendment is compulsion . . . ." Lefkowitz v. Cunningham, 431 U.S. 801, 806 (1977); see also N.J. Div. of Youth & Fam. Servs. v. S.S., 275 N.J. Super. 173, 179 (App. Div. 1994). However, the "very fact of [a] trial, or the probative force of the proofs adduced by the prosecution," or the "fear that [a] criminal charge will go unrebutted" are not "compelling" influences that could offend the constitutional privilege. State v. Burris, 298 N.J. Super. 505, 514-15 (App. Div. 1997) (holding the trial court compelled the defendant to testify because it "inextricably linked" her "right not to testify and her right to present psychiatric evidence").

The municipal court did not violate defendant's right not to testify. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)

A-0113-22

(holding appellate review of the trial court's interpretation of "the legal consequences that flow from established facts" is de novo). Given defendant's motion for acquittal, the municipal court was required to determine whether Mary's testimony established defendant was guilty of harassment. The court correctly complied with the rule governing a motion to dismiss, R. 3:18-1, by applying the test set forth in State v. Reyes, 50 N.J. 454, 458 (1967). The court considered "the State's evidence in its entirety" and gave "the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom," and found sufficient evidence to support a conviction that defendant harassed Mary. Reyes, 50 N.J. at 458-59. This is not a situation where defendant's desire to present his own evidence was "inextricably linked" to his ability to testify. See Burris, 298 N.J. Super. at 514. Defendant has cited no New Jersey case law to support his argument.

Moreover, if the municipal court erred in assessing the credibility of Mary's testimony when making its findings to decide defendant's motion, the State's contention that it was an invited error has merit. See State v. A.R., 213 N.J. 542, 561 (2013) (under the "invited-error doctrine . . . trial errors that 'were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal'" (quoting State v. Corsaro, 107

N.J. 339, 345 (1987))).  Defendant cannot reverse his conviction after requesting the municipal court decide his motion to dismiss and then claim the court's action compelled him to waive his Fifth Amendment rights.  The court's findings were entirely induced by defendant's motion for acquittal.

B.

Defendant argues that because Mary's subjective reaction is not relevant in assessing his "purpose" to harass, the record lacks substantial credible evidence of harassment.  We disagree.

In pertinent part, N.J.S.A. 2C:33-4(a) provides harassment occurs when, with the purpose to harass, a person "[m]akes, or causes to be made, one or more communications anonymously . . . , or in offensively coarse language, or any other manner likely to cause annoyance or alarm."  See Corrente v. Corrente, 281 N.J. Super. 243, 249 (App. Div. 1995) (holding a fact finder must determine the defendant acted with the purpose to harass (citing D.C. v. T.H., 269 N.J. Super. 458, 461-62 (App. Div. 1994))).  Because "direct proof of intent" is often absent, "purpose may and often must be inferred from what is said and done and the surrounding circumstances."  State v. Castagna, 387 N.J. Super. 598, 606 (App. Div. 2006) (citing State v. Siegler, 12 N.J. 520, 524 (1953)).  Finding the defendant's purpose to harass must be supported by evidence that the defendant's

11

"conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." J.D. v. M.D.F., 207 N.J. 458, 487 (2011) (citing State v. Fuchs, 230 N.J. Super. 420, 428 (App. Div. 1989)). Even if the defendant's comments were subjectively "vulgar," "unsolicited," "unwelcome," or "sexually suggestive," the subjective perception of the recipient is insufficient to warrant a criminal conviction for harassment." Id. at 487; see also RG. v. R.G., 449 N.J. Super. 208, 226 (App. Div. 2017). In determining whether the defendant's conduct constitutes harassment, a judge may use "[c]ommon sense and experience," and "[t]he incidents under scrutiny must be examined in light of the totality of the circumstances." Hoffman, 149 N.J. at 577, 585. "Absent a legitimate purpose behind [the] defendant's actions, the trial court could reasonably infer that [the] defendant acted with the purpose to harass [the victim]." Id. at 577.

Defendant fails to show the Law Division judge's guilty finding was flawed. Defendant correctly asserts "sexually suggestive" comments alone are insufficient to establish purpose to harass. The judge's analysis, however, was more nuanced. Upon finding Mary's assertions of defendant's conduct credible, the judge reasoned that given defendant's supervisory role over Mary, defendant's comments served no legitimate purpose and that it defied common

12

sense to view them as playful as he contended.  See Hoffman 149 N.J. at 577.

The judge, in employing the "substantial evidence rule," State v. Heine, 424 N.J.

Super. 48, 58 (App. Div. 2012), correctly made independent findings of facts

and conclusions of law based on the record developed in the municipal court,

see State v. Avena, 281 N.J. Super. 327, 333 (App. Div. 1995) (citing State v.

Johnson, 42 N.J. 146, 162 (1964)).  The judge's findings "g[ave] due, although

not necessarily controlling, regard to the opportunity of the" court to evaluate

witness credibility.  Johnson, 42 N.J. at 157.  We, therefore, agree with the

judge's finding that defendant's statements under the circumstances sufficiently

established his comments were made with the "purpose" to harass Mary.

## C.

Lastly, defendant contends the Barnegat municipal prosecutor's failure to

produce a "material" Middletown police report constitutes a Brady violation and

violation of our discovery rules.  Defendant asserts if he had the police report

he could have impeached her because the reported date Mary claimed the

undergarment incident occurred conflicts with the date she testified at trial.

Again, we disagree.

Under Rule 7:7-7(b)(9), a municipal court defendant is entitled to "police

reports that are within the possession, custody[,] or control of the prosecuting

attorney." See also R. 3:13-3(b)(1)(H) (regarding the prosecution's general obligation to disclosure of "police reports that are within the possession, custody, or control of the prosecutor"). In accordance with Brady, a defendant's due process rights are violated when: "(1) the evidence at issue [is] favorable to the [defendant], either as exculpatory or impeachment evidence; (2) the State must have suppressed the evidence, either purposely or inadvertently; and (3) the evidence must be material to the defendant's case." State v. Brown, 236 N.J. 497, 518 (2019).

The undisputed record reflected the Barnegat municipal prosecutor never had knowledge, possession, custody, or control of the Middletown police report. Defendant, however, cites State v. Nelson, 155 N.J. 487 (1998), arguing the non-prosecuting Middletown law enforcement's knowledge of Mary's report of defendant's conduct to them should be imputed onto the Barnegat prosecutor, making him constructively aware of the Middleton police report. Defendant's reliance is misplaced.

In Nelson, the Court held the State violated Brady when it to failed to disclose to the defendant a civil complaint filed by a detective, employed by a borough within Camden County, against the borough and the county alleging he was improperly trained by Camden County and the borough. Nelson, 155 N.J.

at 498, 500. The detective's alleged improper training purportedly contributed to the defendant's second-degree aggravated assault against the detective and was thereby material to the defendant's guilt and punishment. Id. at 491, 499. The Court "imput[ed] awareness of the [detective's] complaint to the trial prosecutor and [held] that the [complaint] was suppressed for Brady purposes" because "the complaint was filed by one of the 'law enforcement personnel' involved in the investigation of defendant's 'particular criminal venture,' and it was brought against the 'prosecutor's entire office.'" Id. at 499-500 (citations omitted).

Here, unlike the detective's involvement in the defendant's prosecution in Nelson, there was no connection between the respective Barnegat and Middletown municipal courts and prosecutors. This is not the relationship akin to a county prosecutor and one of the local municipal governments within its jurisdiction as in Nelson. Defendant's trial took place in Barnegat municipal court only for incidents occurring in Barnegat. Middletown's law enforcement personnel were not involved in any aspect of Barnegat's "criminal venture." The fact that the Middletown police report stated "[Mary] fi[l]ed a report with the Barnegat Police Department[,] who advised her to respond to Middletown Police to make a report with [them] as well because . . . incidents she was

A-0113-22

reporting . . . occurred in [Middletown]," does not establish Barnegat police were aware of the Middletown police report. This is not a case where the non-disclosed evidence was stored at the prosecuting municipality's office. See Brown, 236 N.J. at 509 (recognizing "the prosecutor turned over eighteen reports not previously given to defense counsel that 'were in a file that was actually in [the State's] office in homicide'" (alteration in original)).

Moreover, even if the Middletown police report should have been turned over, the judge determined the report's conflicting statements do not rise to the level of materiality required for Brady. Defendant points to how the report indicates the undergarment incident occurred eight months later – during another conversation – than the date Mary testified it occurred. We discern no reason to conclude that the date confusion would have affected the findings by the municipal court and Law Division judge that Mary was credible and defendant was not credible. See Locurto, 157 N.J. at 474 ("Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." (citation omitted)). Mary's accusations of defendant's conduct were consistent in court and to the Middletown police.

To the extent we have not specifically addressed any of defendant's arguments, it is because we conclude they are of insufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0113-22