# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0712-17T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANANCY,

      Plaintiff-Respondent,

v.

G.P.,

      Defendant-Appellant.

_____

IN THE MATTER OF T.P.,

      a Minor.

_____

Argued March 4, 2019 – Decided March 28, 2019

Before Judges Messano and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FN-16-0128-16.

Amy E. Vasquez, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Amy E. Vasquez, on the briefs).

Peter D. Alvino, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jason W. Rockwell, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

Danielle Ruiz, Designated Counsel, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith A. Pollock, Deputy Public Defender, of counsel; Danielle Ruiz, on the brief).

PER CURIAM

Defendant G.P. and his paramour, S.S., are the biological parents of one child: T.P., born in January 2016. In March 2016, the Division of Child Protection and Permanency (Division) filed a complaint for custody, care and supervision of T.P.

This appeal has its genesis in defendant's stipulation to a finding of abuse or neglect of T.P., following the conclusion of evidence presented by the Division at a fact-finding hearing. Thereafter, a Family Part judge denied defendant's applications to withdraw his stipulation. Defendant now appeals from a June 28, 2016 stipulation order and an August 30, 2017 order terminating litigation.[1] He claims the judge failed to make the requisite findings of abuse or

---

[1] Following entry of defendant's stipulation, the Division amended its finding against S.S. from substantiated to unfounded. S.S. is not part of this appeal.

neglect; the factual basis provided for his stipulation did not establish a finding of abuse or neglect; and the judge abused his discretion in denying defendant's motion to withdraw his stipulation. We affirm.

I.

We derive the salient facts from the evidence presented by the Division at the first day of the hearing on June 27, 2016. That evidence included the testimony of three witnesses: Dr. Medesa Espana, who qualified as an expert in pediatric emergency medicine and child abuse and neglect; Passaic County Prosecutor's Office (PCPO) Detective Tabitha Thompson, who interviewed defendant; and Division caseworker Carmela Pappa. The Division also entered into evidence, without objection, several documents, including its summary reports, photographs, and T.P.'s medical records. Defendant and S.S. appeared at the hearing and were represented by separate counsel.

The precipitating event that led to the Division's involvement with the family occurred on March 4, 2016, when T.P. was admitted to the hospital with "severe head trauma." T.P. presented with a visible "linear red mark" on his upper eyelid and "a broken blood vessel on the surface of the globe of the eye." T.P.'s treating physicians diagnosed the child with brain and retinal hemorrhaging. They reported to the Division that both parents denied T.P. had

suffered a recent fall or trauma, and the retinal hemorrhaging indicated T.P. had been "shaken." T.P. remained on life support for approximately one week until he was able to breathe on his own.

Dr. Espana detailed T.P.'s injuries and testified they were consistent with Shaken Baby Syndrome (SBS), which results from "a forceful acceleration, deceleration movement of the eyeball . . . in its socket." According to Dr. Espana, "the presentation of the clinical manifestations indicate[d] that an injury that occurred within a [twenty-four to forty-eight] hour time frame." Dr. Espana specifically refuted any suggestion that T.P.'s injuries could have been caused by a prenatal condition contracted from S.S., or trauma during childbirth. T.P.'s lack of neck and spinal injuries had no impact on Dr. Espana's opinion that T.P.'s brain and retinal hemorrhaging resulted from SBS.

The Division introduced a segment of Thompson's video-recorded interview of defendant. Among other things, defendant acknowledged T.P. was in his sole care the day before the child was admitted to the hospital. Thompson presented defendant with an anatomically-correct doll and asked him to demonstrate the manner in which he played with his son. Defendant "toss[ed]" the doll in the air with "his hands . . . removed from the [doll]'s body, and then he grasped the baby again once the baby came down[.]" Thompson "would [not]

4

describe [the toss] as gentle, . . . bear[ing] in mind the baby was [two-]and[-]a[-]half months with an unsupported neck, and [as such Thompson could not] . . . judge how gentle that toss would have been for a baby that age." Defendant tossed the doll "just over his head . . . several times."

Significantly, Thompson testified she filed her report and the PCPO was preparing the matter for presentation to a grand jury. At the time of the hearing, no formal complaints had yet been filed.

Pappa's investigation confirmed no one else resided with the family. T.P.'s maternal grandmother had cared for the child during the week of February 21, 2016, and T.P.'s great maternal grandmother had cared for him three days prior to his hospitalization. Notably, Pappa was not asked whether she or anyone on behalf of the Division told the parents criminal charges would not be pursued.

At the conclusion of the Division's case, the judge determined Dr. Espana was a "highly credible witness" and based on her testimony, T.P.'s injuries were "not spontaneous injuries[,]" but rather "the result of severe trauma," occurring twenty-four to forty-eight hours before they were inflicted. Citing N.J.S.A. 9:6-8.46(a)(2),[2] the judge determined the Division presented prima facie evidence

---

[2] Pursuant to N.J.S.A. 9:6-8.46(a)(2):

that T.P. suffered non-accidental injuries, and defendant and S.S. were "the only two [people] who had access to the child" during the twenty-four to forty-eight hour period prior to infliction of his injuries. On that basis, the judge determined the Division satisfied its burden of production, thereby shifting the burden of proof to the parents to prove non-culpability. See In re D.T., 229 N.J. Super. 509, 517 (App. Div. 1988) (recognizing where, as here, there is limited access to a child in a Title Nine litigation, especially an infant, the burden shifts to those with access to prove non-culpability); see also N.J. Div. of Youth & Family Servs. v. S.S., 275 N.J. Super. 173, 179 (App Div. 1994).

The next day, in lieu of presenting evidence to demonstrate he was not responsible for T.P.'s injuries, defendant submitted to the court a "voluntary stipulation[/]admission to child abuse or neglect" form, which he signed after reviewing the form with counsel.[3]  After extensive colloquy with defendant to ensure he understood the nature and import of his decision, defendant admitted

> [P]roof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or guardian shall be prima facie evidence that a child of, or who is the responsibility of such person is an abused or neglected child[.]

[3] Defendant did not include the form in his appendix.

he "engaged in acts that resulted in injuries to [his] son that constituted abuse or neglect[.]" Following the testimony, the judge held defendant's conduct was sufficient to sustain a finding of abuse or neglect under N.J.S.A. 9:6-8.21(c)(4)(b). A stipulation order consistent with the judge's findings was entered that day.

In February 2017, defendant filed a motion to vacate the stipulation. Because the motion failed to include an "affidavit[] made on personal knowledge" pursuant to Rule 1:6-6, the judge denied the motion without prejudice by order entered on March 6, 2017. In doing so, however, the judge also found the record supported the factual basis for defendant's stipulation. Noting the Division presented extensive testimony the day before defendant entered his stipulation, the court recognized T.P.'s injuries were "fresh in everyone's mind" when G.P. "stipulate[d] that he handled the child in such a way as he caused injury to the child."

On March 24, 2017, defendant filed a second motion to vacate his stipulation, which was supported by his affidavit.[4] During the permanency hearing conducted that date, defense counsel informed the court that he had "learned two days [prior] that [defendant] was indicted [by a] Passaic County

---

[4] Defendant did not include the affidavit in his appendix.

A-0712-17T4

[grand jury] for two counts of cruelty and neglect of children."  Apparently, the indictment had been returned in January 2017.  Defense counsel told the judge he would not have permitted defendant to stipulate to a finding of abuse or neglect had he known defendant was facing criminal charges.  He further claimed the Division misled defendant to believe criminal charges would not be pursued.  On the return date for the motion, the judge rejected defendant's argument, citing Thompson's testimony, which clearly indicated the PCPO was preparing the case for presentation to a grand jury.  An order was entered on July 14, 2017.

On August 30, 2017, the judge denied defendant's ensuing motion for reconsideration, recognizing defendant's motions to withdraw his stipulation were motivated by his criminal charges, and his factual basis was legally sufficient.  The court also terminated the litigation, and the family was reunified. This appeal followed.

## II.

Our standard of review is well settled.  We are bound by the family court's factual findings if supported by sufficient credible evidence.  N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577-78 (App. Div. 2010).  We accord particular deference to the family court's fact-finding because of the

8

court's "special expertise" in family matters, its "feel of the case," and its opportunity to assess credibility based on witnesses' demeanor. N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008); Cesare v. Cesare, 154 N.J. 394, 412-13 (1998).

Pursuant to N.J.S.A. 9:6-8.21(c)(4), an abused or neglected child includes:

> [A] child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof[.]

The Division "must prove that the child is 'abused or neglected' by a preponderance of the evidence, and only through the admission of 'competent, material and relevant evidence.'" N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 32 (2011) (quoting N.J.S.A. 9:6-8.46(b)). The statute requires a court to consider harm or risk of harm to the child, as opposed to the intent of the abuser, because "[t]he main goal of Title [Nine] is to protect children 'from acts or conditions which threaten their welfare.'" G.S. v. Dep't of Human Servs., 157 N.J. 161, 176 (1999) (citation omitted). Further, the phrase "minimum degree of care," as used in N.J.S.A. 9:6-8.21(c)(4)(b), means conduct that is not "grossly or wantonly negligent." Id. at 178. Therefore, to show a failure to

exercise a minimum degree of care, negligence is not sufficient, but intentional behavior is not essential. Id. at 178-79.

In New Jersey Division of Youth & Family Services v. J.Y., 352 N.J. Super. 245, 265-66 (App. Div. 2002), we held that a

> stipulation must be definite and certain in its terms and the consent of the parties to be bound by it must be clearly established. A factual stipulation in an abuse or neglect case must conform to these same standards. That is, the judge must be satisfied that there is a factual basis from which to conclude that defendants have committed some specific act or acts which constitute abuse or neglect as defined in N.J.S.A. 9:6-8.21(c) and that the parents willingly, knowingly and voluntarily agree that they have committed these acts.
>
> [(Citations omitted).]

In considering defendant's contentions in light of the controlling authority, we begin with a review of the process by which his stipulation was obtained. At the onset of the June 28, 2016 proceeding, defendant advised the judge he wished to enter a stipulation in lieu of presenting evidence to rebut the presumption that T.P. only could have been injured while in his custody. At that point in the proceedings, the Division had presented all of its evidence.

Prior to accepting defendant's stipulation, the judge engaged in extensive questioning and explanatory discussions with defendant, ensuring he understood the nature of his decision to stipulate. At the conclusion of the judge's inquiry,

10

defendant acknowledged he was "prepared to provide the [c]ourt with [a] factual basis for [his] admission of abuse or neglect." Clearly, at that point in the proceedings, defendant was well aware of the Division's complaint alleging abuse or neglect for the injuries sustained by T.P. in March 2016, which led to the child's hospitalization. Having heard the testimony of Dr. Espana the previous day, defendant was fully aware of the extent of T.P.'s injuries. Defendant also had the opportunity to view his video-recorded statement and hear Thompson's testimony concerning his incredible demonstration.

Against that factual and procedural backdrop, defendant admitted he "engaged in acts that resulted in injuries to [his] son that constituted abuse or neglect." While defendant correctly notes the stipulation does not reference the date, time, location or specific act, there can be no doubt that his stipulation refers to the one incident referenced in his complaint, about which substantial testimony was adduced at the hearing the previous day. Cf. State v. Mitchell, 126 N.J. 565, 581 (1992) (where the Court recognized when considering a guilty plea in a criminal case, trial courts are permitted to consider the "surrounding circumstances").

Immediately after defendant acknowledged he abused or neglected T.P., the judge set forth his findings. In particular, the judge found defendant's

11

stipulation was made knowingly, willingly, and voluntarily. The judge elaborated:

> [Defendant] understands that there is no promise that has been made to him in exchange for the stipulation that he [i]s offering[; t]hat he understands his right to a fact finding. In fact, he was here. We spent several hours going through the process of fact finding. The Division . . . put[] on witnesses[, whom c]ounsel cross-examined. In fact, we came to the close of the [Division]'s case where I announced my belief that there had been at least a prima facie showing sufficient to shift the burden to the parents to come forward with exculpatory evidence.

The judge ultimately determined defendant's stipulation acknowledged his "conduct caused injury" which "constitutes abuse [or] neglect" under N.J.S.A. 9:6-8.21(c)(4)(b).

Nonetheless, defendant claims J.Y. supports his argument that the judge failed "to make any specific factual findings" and "relied instead on an amorphous stipulation by the parties . . . ." 352 N.J. Super. at 263. This case, however, is unlike J.Y., where the court in an abuse or neglect fact-finding hearing relied on the attorneys' factual representations outside their personal knowledge, heard from unsworn witnesses not subject to cross-examination, and relied on vague and unsupported stipulations of the parties. Id. at 264. Instead, having heard the sworn testimony of the Division's witnesses, who were subject

to cross-examination the day before he entered his stipulation, defendant admitted he "engaged in acts that resulted in injuries" to T.P. "that constituted abuse or neglect" regarding one incident alleged in the Division's verified complaint.

Moreover, the record contains substantial credible evidence to support the judge's finding of abuse or neglect. N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010); see also N.J. Div. of Child Prot. & Permanency v. Y.A., 437 N.J. Super. 541, 546 (App. Div. 2014). Indeed, the judge summarized the evidence at the conclusion of the Division's case-in-chief, finding Dr. Espana was "highly credible." Accordingly, he found persuasive her testimony that T.P.'s "injuries occurred, within [twenty-four] to [forty-eight] hours" of his hospitalization. Further,

> The parents indicated to everyone with whom they spoke, whether it was the P[CPO], the Division worker, . . . the hospital personnel, Dr. Espana, that in that critical [twenty-four] to [forty-eight] . . . hour time period, the two of them were the only two who had access to the child, that provided care and supervision for the child. . . .
>
> Here we have that limited number of caretakers, in a very defined period of time, who were the only caretakers for the child.
>
> So, these injuries . . . are not spontaneous injuries. . . . These are injuries that [Dr. Espana]

believes are inflicted, or are non-accidental. That is to say, the result of severe trauma, acceleration and deceleration trauma.

At the very least, this evidence supports a finding that defendant abused or neglected T.P. by failing "to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm" on the child. N.J.S.A. 9:6-8.21(c)(4)(b). We therefore see no reason to disturb the judge's finding that defendant's conduct constituted a finding of abuse or neglect under N.J.S.A. 9:6-8.21(c)(4)(b).

We conclude the judge complied with the controlling decisional law that addresses stipulations in Title Nine abuse or neglect proceedings. From our review of the record, defendant established a factual basis for his stipulation, and the surrounding circumstances underscored the judge's conclusion that defendant committed an act which constituted abuse or neglect.

We have considered defendant's remaining arguments and conclude they lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-0712-17T4