# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0840-20
A-0841-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

L.J. and O.S.,

     Defendants-Appellants,

and

M.C.U.,

     Defendant-Respondent,

and

M.U.A. and S.S.,

     Defendants.

_____

IN THE MATTER OF D.S.J.,
a minor.

_____

Submitted January 5, 2022 – Decided January 25, 2022

Before Judges Rothstadt and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket Nos. FN-09-0430-15 and FN-09-0447-15.

Joseph E. Krakora, Public Defender, attorney for appellant L.J. (Cecilia M.E. Lindenfelser, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant O.S. (Sarah L. Monaghan, Designated Counsel, on the briefs).

Andrew J. Bruck, Acting Attorney General, attorney for respondent New Jersey Division of Child Protection and Permanency (Jane C. Schuster, Assistant Attorney General, of counsel; Maureen B. Bull, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent M.C.U. (Phuong V. Dao, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; David B. Valentin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

These consolidated appeals require us to evaluate the court's supplemental factual findings supporting its conclusion that defendants L.J. (Leslie)[1] and O.S. (Oscar) abused and neglected their four-month-old daughter, D.J. (Darla). In defendants' first appeal, we concluded a remand was necessary for the court to explain certain discrepancies we deemed significant related to its factual findings supporting its initial Title Nine abuse and neglect determinations. See New Jersey Div. of Child Prot. & Permanency v. O.S., No. A-3746-17 (App. Div. June 30, 2020). In an October 21, 2020 order and accompanying written opinion, the Family Part again concluded that defendants caused Darla's various injuries, including a subdural hematoma, skull fracture and multiple rib fractures, but that Oscar was solely responsible for a fracture of Darla's tibia.

We reverse that portion of the court's October 21, 2020 order to the extent it concluded Oscar and Leslie caused certain of Darla's injuries, including the subdural hematoma, skull fracture and multiple rib fractures. We arrive at this determination because the court made its Title Nine findings as to those injuries by relying on the conditional res ipsa loquitor burden-shifting paradigm detailed in In re D.T., 229 N.J. Super. 509 (App. Div. 1988), which our Supreme Court

---

[1] We use fictitious names for the parties and relevant witnesses throughout the opinion to maintain their confidentiality. R. 1:38-3(d)(12).

A-0840-20

recently rejected in <u>New Jersey Div. of Child Prot. & Permanency v. J.R.-R.</u>, 248 N.J. 353, 359 (2021).

We reach a different conclusion as to the court's finding that Oscar alone caused Darla's tibia injury. In reaching its Title Nine determination against Oscar for that injury, the court relied on <u>N.J. Div. of Youth & Family Servs. v. J.L.</u>, 400 N.J. Super. 554, 470 (App. Div. 2008), and did not apply principles of conditional res ipsa. The court also reconsidered the record consistent with the instructions detailed in our prior written opinion and made supplemental findings which we are satisfied are supported by substantial credible evidence in the record and that warrant our deference.

Finally, we direct the matter be assigned to a different judge on remand who shall conduct a new fact-finding proceeding. This remedy is in no way to be interpreted as a criticism of the judge who presided over the initial fact-finding and remanded proceedings. Indeed, she did so conscientiously and diligently. We proceed in this fashion in light of the significance of a finding of abuse and neglect under these circumstances, to ensure that any subsequent findings are made without concern that the judge may remain committed to her earlier conclusions, and because the judge has already made credibility findings related to the findings to which we conclude warrant a new hearing.

A-0840-20

I.

To provide context for our opinion, we briefly detail the relevant facts as well as the procedural history related to the initial fact-finding and remand proceedings. After Leslie and Oscar moved to West New York with their only daughter, Darla, they moved in with their longtime friends M.E.U.A. (Emily) and her husband S.Y.S. (Stan). Emily began helping to care for Darla while Leslie and Oscar worked during the day. Because Emily was pregnant with her own child, she stopped caring for Darla for a brief period, and Emily's sister, M.C.U. (Carla), assumed Emily's responsibilities for a few days in early May 2015. During this period, babysitter M.J.Y.J. (Jane) also watched Darla for a day.

Once back in Emily's care on June 2, 2015, Darla became "fussy" later in the day and Emily began to feed her. While Emily was feeding Darla, the child's eyes rolled back into her head and her body went limp. In response, Emily stated she "hit [Darla's] head, her back, . . . pushed on [her heart], . . . [and] gave her . . . air through her mouth" in an attempt to revive her.

Darla was taken by ambulance to Palisades Medical Center, where she experienced a seizure. She was initially diagnosed with a subdural hematoma, skull fracture, and rib fractures. While the damage to her skull was "fresh," the

5

various rib injuries were at different stages of healing. The doctor reported that a hematoma is usually caused by head trauma or shaken baby syndrome. An orthopedic surgeon evaluated Darla and found additional injuries including a fracture of the left scapular spine, multiple rib fractures, and a corner fracture of the tibia.

Darla was transferred to Hackensack University Medical Center and remained hospitalized for ten days, where her condition was initially "critical but stable." Mark Siegel, M.D., found that Darla's injuries were indicative of "non-accidental trauma" and genetic tests confirmed Darla's injuries were not the result of underlying bone or metabolic disease.

The Division of Child Protection & Permanency (the Division) was notified of Darla's injuries and conducted an emergency removal. Leslie and Oscar thereafter agreed to questioning by the Hudson County Prosecutor's Office and both denied knowing what happened to Darla.

During her interview, Leslie repeated that she and Oscar never hit or dropped Darla. After providing answers to extensive questioning, Leslie invoked her right to remain silent and stated that the police were improperly repeating previous inquiries. Leslie also began a polygraph examination but was unable to complete it because she became too emotional.

A-0840-20

Oscar also offered that neither he nor Leslie dropped Darla. He reiterated that she had never fallen, and that he and Leslie never injured her. At the time of Oscar's interview, doctors had only diagnosed the hematoma, scapula, and rib fractures, yet Oscar asked "[i]f they're going to be running more tests tomorrow, which could be on her leg[,] [w]hat would those show?"

Further, despite assuring that he and Leslie had never dropped Darla, Oscar also stated, "what if I've dropped her? . . . [T]he whole truth has to be said, under oath . . . Well, I'm saying this under oath." Oscar also completed a polygraph examination by the prosecutor's office, and again asserted that he did not know the source of Darla's injuries.

Emily and Stan also agreed to interviews by the Hudson County Prosecutor's Office and both denied knowing what had happened to Darla. Stan explained that he worked every day and did not help with the children. Emily reported that after Darla experienced the seizure, she called 9-1-1 and began giving Darla mouth-to-mouth resuscitation, shook her in the air, and hit or rubbed her on the back and head in an attempt to revive her. She explained that she never hit Darla at any other time and denied touching her in any way that might hurt her. Emily also completed a polygraph examination and again denied

hurting or shaking Darla except for her attempts to revive the child on June 2, 2015.

The Division filed a verified complaint and order to show cause against Leslie and Oscar for custody, care, and supervision of Darla on June 15, 2015, which the court granted and allowed the parents to have supervised visitation. The Division filed an amended verified complaint adding Carla to this litigation, because she had cared for Darla around the time of the injuries. Jane was not named as a defendant because the Division concluded she did not cause the injuries.

The fact-finding hearing began on March 22, 2016 and continued over five nonconsecutive days through July 2016. The court consolidated Leslie's, Oscar's, and Carla's case with Emily and Stan's for the fact-finding hearing.

Dr. Julia DeBellis, M.D., Medical Director of the Audrey Hepburn Children's House, testified on behalf of the Division. She stated that Darla's tibia fracture could not be dated and that the earliest dateable injury, the left rib fractures, occurred two to three weeks before the June 3, 2015, x-ray (the week of May 12) and the right rib fractures occurred less than ten days before the x-ray. Darla's hematoma occurred within 24 to 48 hours of the CAT scan, which was taken on June 2, 2015, at 5:52 p.m. She again stated that Darla's injuries

A-0840-20

were from "nonaccidental trauma," but that Emily's handling of Darla during the seizure could not have caused Darla's injuries. The Division also presented intake worker Becky Mendoza, Division supervisor Debra Cordova and caseworker Suzanne Marino.

After presenting its case, the Division moved to shift the burden of proof to Leslie, Oscar, Emily, Stan, and Carla to exculpate themselves under the doctrine of conditional res ipsa loquitur as detailed in In re D.T. The Division maintained that it had proven a prima facie case of abuse and neglect of Darla, and that a limited number of people had access to and control of Darla at the time her injuries occurred. Darla's law guardian joined in the motion.

The court initially reserved decision on the motion but in light of the testimony at the fact-finding hearing, concluded as a threshold matter that the Division had failed to establish a prima facie case against Stan as to any of the injuries and dismissed him from the litigation. As to the hematoma, scapular fracture, and rib fractures, the court found that based on the testimony presented, the earliest of these injuries occurred around May 13, 2015, and continued thereafter.

The court found that since May 13, 2015, Leslie, Oscar, Emily, and Carla had all cared for Darla. The court noted its "serious reservations" regarding

9

applying conditional res ipsa loquitur in the case but nevertheless concluded that because the aforementioned injuries were "caused by abuse and were not accidental," it applied the conditional res ipsa loquitur burden-shifting analysis to the hematoma, scapular fracture, and rib fractures. In doing so, the court credited Dr. DeBellis's opinion concluding that these injuries occurred beginning approximately during the week of May 12, 2015 and found that because the Division established a prima facie case of physical abuse "during a time when [Darla] was under these defendants' care," defendants were required to present evidence sufficient to overcome the presumption that they abused and neglected Darla.

As to the tibia fracture, however, the court applied the traditional res ipsa loquitur principles set forth in J.L., and did not shift the burden of proof because the experts could not estimate when that injury occurred, and the court was unable to determine which of the defendants cared for Darla at that time. Thus, the Division bore the burden of proof as to the tibia injury against Leslie, Oscar, Emily, and Carla, who could then "come forward with evidence to rebut the presumption of abuse or neglect." J.L., 400 N.J. Super. at 470.

Dr. Jake Levenbrown, M.D., a pediatric radiologist, testified on Emily's behalf. Regarding the tibia fracture, he testified that it was difficult to date, but

could have occurred several weeks before the June 3, 2015 x-ray. With respect to Darla's scapular fracture, he testified that it probably occurred approximately seven days before the x-ray, or sometime after May 24, 2015. He estimated that Darla's left rib fractures occurred three weeks prior to the x-ray, or approximately May 13, 2015 through May 15, 2015. All of the fractures were suspicious for abuse, though her right rib fracture may have been related to revival attempts at the time of her seizure. As for Darla's hematoma, he opined that it occurred less than 24 hours before June 3, 2015. None of Darla's injuries were sustained before April 30, 2015.

Dr. Zhongxue Hua, M.D., Ph.D., a forensic pathologist and neuropathologist, testified on Leslie's behalf. He opined that Darla's "fresh injury," the hematoma, occurred on June 2, 2015. As to the tibia fracture, he stated that injury could not be dated and Dr. Hua stated his belief that the scapular fracture occurred seven to ten days before the x-ray and that the left rib fractures likely occurred more than two weeks before the x-ray, but that the right rib fractures had no callus formation, so they likely occurred less than seven to ten days before her x-ray. Dr. Hua therefore concluded that Leslie did not cause the injuries. Oscar's counsel asked Dr. Hua two substantive questions on cross-examination, and Dr. Hua confirmed that he "pretty much" ruled out Oscar as

11

A-0840-20

causing the "fresh" injuries, and that there was "no evidence" that Oscar caused the other injuries.

Following trial, the court issued a written opinion finding that Leslie and Oscar abused and neglected Darla, but Emily and Carla did not. The court found that the Division had established that Darla had suffered abuse and neglect and reiterated that, as to the injuries which could be dated, the defendants were required to exculpate themselves under its earlier order adopting conditional res ipsa loquitur. The court explained, consistent with its findings on the motion to shift the burden of proof, that except for the tibia fracture, the earliest these injuries could have occurred was "the week of May 12." Since that time, Darla "had four caretakers: her parents, [Carla], and [Emily]."

As a threshold matter, the court found that Dr. DeBellis and Dr. Levenbrown were more credible than Dr. Hua because it concluded that Dr. Hua's training in pathology and forensics was less persuasive than Dr. DeBellis's experience in identifying child abuse and Dr. Levenbrown's practice in pediatric radiology. The court further found that Dr. Hua's opinions were "highly speculative and unconvincing."

As to Leslie, the court found that she did not present sufficient evidence to overcome the presumption of abuse and neglect in connection with Darla's

hematoma, scapula fracture, and rib fractures. With respect to Oscar, the court found that he "did not present any evidence to overcome the presumption of abuse or neglect" in connection with those injuries. The court therefore concluded that both Leslie and Oscar abused or neglected Darla. Conversely, the court found that Carla and Emily had met their burden of establishing non-culpability for abusing Darla.

The court made separate findings as to Darla's undated tibia fracture. The court found that based upon Oscar's statements to the prosecutor's office inquiring if another x-ray would reveal an injury to Darla's leg, the Division met its burden of proof to show, by a preponderance of the evidence, that it was likely caused by Oscar.

After the court's decision, the Division approved full reunification with the parents, noting that "the parents are not a risk to the child." The Division dismissed the litigation, and Leslie and Oscar appealed the court's abuse and neglect finding.

Leslie and Oscar appealed, and in our June 30, 2020 unpublished opinion, we affirmed the trial court's application of conditional res ipsa loquitur, finding that the court properly shifted the burden to defendants under In re D.T.'s framework for the rib fractures, the subdural hematoma and the scapula fracture.

13

We held that there was "no evidence that additional individuals cared for Darla when the hematoma, scapula fracture, and rib fractures occurred" and the expert testimony "made clear that [Darla's] injuries had not yet occurred" when Jane was babysitting.

We agreed with defendants that certain of the court's findings did not appear supported by the evidence in the record. Specifically, we held that the trial court "overlooked or misinterpreted various portions of the record," highlighting four factual findings that "appear[ed] critical to its ultimate determination. Thus, we remanded because those findings required "further explication" as they could "favor a different outcome." These discrepancies included the timing of the hematoma; Emily's statements to the Division; Leslie's failure to complete a polygraph; and Oscar's statements regarding Darla's leg.

On remand, the trial court issued an amended fact-finding opinion and order on October 21, 2020. The trial court concluded that "none of these discrepancies [identified in our June 30, 2020 opinion] change[d] th[e] [c]ourt's ultimate conclusion that based upon the totality of the circumstances, including the salient, relevant facts, the credible expert testimony of Drs. DeBellis and Levenbrown and the timeline of injuries, the Division proved by a

14

preponderance of the evidence that only the defendant-parents were more likely than not to have caused all of the injuries." The court also concluded that Leslie and Oscar failed to overcome the presumption that they abused or neglected Darla, but Emily had provided sufficient evidence to establish her non-culpability.

Regarding the tibia fracture specifically, the court again applied traditional res ipsa loquitor principles and considered the entirety of Oscar's statement to the police, along with the other evidence and expert testimony. The court found "all of [Oscar's] statements to have been less than truthful, whether under oath or not" and explained that Oscar's spontaneous questions regarding x-rays on his daughter's leg indicated he might have knowledge of additional injuries of which detectives were not yet aware. The court therefore reaffirmed its conclusion that the Division had successfully carried its burden of proof as to Oscar's culpability under Title Nine, finding that it was more likely than not that he caused that injury.

On appeal, both parents argue that the court erred in: shifting the burden of proof to them; entering an abuse and neglect finding which was unsupported by evidence in the record; and finding that Emily did not abuse and neglect Darla. Emily, on the other hand, argues the court's finding that she was not

A-0840-20

responsible for Darla's injuries was supported by substantial credible evidence in the record.

In their supplemental briefs, the parties also address the recent ruling in J.R.-R., where the Court invalidated the burden-shifting paradigm established in In re D.T.  Specifically, Leslie and Oscar argue that they are entitled to a new trial because J.R.-R. altered the burden-shifting in abuse and neglect cases. Even though that case was decided "after the trial court issued its remand opinion," Leslie and Oscar maintain that it is applicable with "pipeline retroactivity" because their case was pending at the time of the decision.

Both parents argue that J.R.-R. "controls the disposition of [this] case because the trial court relied on In re D.T. to shift the burden to the parents in the initial fact-finding, [we] affirmed that portion of the initial opinion, and the trial court relied on it again to require the parents to come forward with evidence to establish their non-culpability."  Both request a new trial in which the Division bears the burden of proving which of the defendants harmed Darla. Should a new trial be permitted, both parents further contend they are entitled to a new factfinder because on remand, the trial court was "committed to its findings" and "essentially re-issued its [i]nitial [o]pinion, with minor changes."

16

Because the court also found Oscar solely responsible for the tibia injury, he argues he is also entitled to a new trial regarding whether he caused the tibia fracture, even though this finding was not part of the burden-shifting paradigm set forth in In re D.T.  Oscar argues it is "inexplicable" that his "simple question" alone makes it more likely than not that he caused Darla's tibia injury.  He contends that the court's reasoning was "clearly affected by the burden-shifting regarding the other injuries," and the conclusions related to the other injuries "colored the court's finding with respect to the tibia."

Emily argues that the ruling in J.R.-R. does not impact the judge's finding that she provided exculpatory evidence to meet the burden and establish she was not responsible for the abuse.  She contends that no remand is necessary, but if In re D.T.'s burden-shifting is improper under J.R.-R., then the Division not only did not prove she was responsible for the injuries but "did not even have a prima facie case against her."  Further, she contends that "[w]here the trial court again exonerated [her] . . . the co-defendant parents cannot now on appeal ask this court to second guess the trial court's determination of Emily's non-culpability," and any remand should pertain only to Leslie and Oscar.

The Division responds to these arguments explaining that it "no longer intends to defend the portion of the trial court's decision utilizing the burden-

17

shifting paradigm and would not object to a limited remand to the trial court for the purpose of vacating these findings." The Division maintains that J.R.-R. does not impact the trial court's finding that Oscar caused the tibia fracture, and accordingly requests that this finding be addressed on the merits.

Darla, through her Law Guardian, argues that a limited remand is necessary to "clarify whether a finding against [Leslie and Oscar] is justified" related to the rib fractures, the hematoma, and the scapula fracture. Specifically, Darla argues that "identical findings" could have been made with traditional burden-shifting analyses and "as such, the matter should be remanded regarding all findings, except the tibia fracture." Darla disputes Leslie and Oscar's arguments that any remand should be tried by a new factfinder, however.

## II.

We agree with Leslie and Oscar that the Supreme Court's repudiation of the use of conditional res ipsa loquitur in J.R.-R., applies to this case, which was pending at the time of that decision, and requires that we reverse and vacate the October 21, 2020 order as it relates to the hematoma, scapula fracture, and rib fracture injuries. To ensure faithful compliance with the concerns raised by J.R.-R., we also remand for an entirely new fact-finding hearing before a different judge who shall make independent abuse and neglect findings as to

18

these injuries, unbridled by any previous determinations made by the previous judge.

Although Title Nine requires that "any determination that the child is an abused or neglected child" be "based on a preponderance of the evidence," N.J.S.A. 9:6-8.46(b), the statutory regime does not explicitly address burdens of proof and persuasion. Title Nine provides, however, that:

> proof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or guardian shall be prima facie evidence that a child of, or who is the responsibility of such person is an abused or neglected child.
>
> [N.J.S.A. 9:6-8.46(a)(2) (emphasis added).]

Before September 2021, we applied a "conditional res ipsa loquitur" framework to certain cases of child abuse and neglect, as detailed in In re D.T. In that case, the evidence established that the four-month-old child was most likely sexually assaulted during the twenty-four hours prior to a doctor's examination. 229 N.J. Super. at 512. At various times during that period, she was in the care and custody of her two parents; her great aunt, great uncle, and two cousins; or a family friend, the friend's husband and their two grandchildren. Id. at 511–12.

A-0840-20

In reversing the trial court's dismissal of the Division's complaint, the majority in In re D.T. analogized the circumstances to those presented in Anderson v. Somberg, 67 N.J. 291, 298–99 (1975), and held that "where a limited number of persons, each having access or custody of a baby during the time frame when abuse concededly occurred, no one else having such contact and the baby being then and now helpless to identify her abuser, . . . [t]he burden would then be shifted, and such defendants would be required to come forward and give their evidence to establish non-culpability." In re D.T., 229 N.J. Super. at 515, 517 (citing Anderson, 67 N.J. at 298-99); see also New Jersey Div. of Youth & Fam. Servs. v. S.S., 275 N.J. Super. 173, 181 (App. Div. 1994). In essence, "[In re] D.T. created a paradigm to be applied when '[t]he state of the proofs [makes] it difficult to establish by a preponderance of the evidence which of the finite group of possible abusers committed the acts of abuse.'" New Jersey Div. of Child Prot. & Permanency v. K.F., 444 N.J. Super. 191, 201 (App. Div. 2016) (alteration in original) (quoting In re D.T., 229 N.J. Super. at 515).

We narrowed In re D.T.'s holding in J.L., 400 N.J. Super. at 457–59. There, an infant suffered multiple fractures on various occasions. We held that where the child is exposed to a number of unidentified individuals over a period of time, and it is unclear as to exactly where and when the child's injuries took

20

place, traditional res ipsa loquitur principles apply. The consequence of our holding in J.L. was that once the Division established a prima facie case of abuse or neglect under N.J.S.A. 9:6–8.46(a)(2), the burden thereafter shifted to the parents, or any other potentially culpable caretaker, to come forward with evidence to rebut the presumption of abuse or neglect. Unlike the rule set forth in In re D.T., the burden of proof did not shift to the parents to prove their non-culpability by a preponderance of the evidence, rather the burden of proof remained on the Division. Id. at 470.

As noted, in September 2021, our Supreme Court in J.R.-R. overruled In re D.T.'s burden-shifting paradigm as an improper application of the Legislature's clear and comprehensive regime for finding that a particular person had abused or neglected a child. J.R.-R., 248 N.J. at 360. In J.R.-R., the Division sought temporary custody of a ten-month-old child who had suffered multiple injuries. Id. at 360-61. The trial court found by a preponderance of the evidence that the Division had established that the child's injuries reflected abuse and neglect. Id. at 365.

Relying on In re D.T., the trial court identified the parents as "the only two people [who] had dominion, control and also a legal duty to protect and care" for the child, and it imposed upon them the burden to rebut by a

21

preponderance of the evidence the inference that they had inflicted the injuries or allowed them to be inflicted.  Ibid.  The trial court found both parents responsible for abuse and neglect, despite its recognition that it could not identify which of them "actually failed to supervise" or "actually caused the injuries." Ibid. We affirmed. Id. at 365-66.

The Supreme Court reversed, finding that under Title Nine, the Legislature had placed the burden on DCPP to prove by a preponderance of the evidence that a parent abused or neglected a child. J.R.-R., 248 N.J at 359 (citing N.J.S.A. 9:6-8.46(b)(1)).  The Court held that we erred by relying on In re D.T., which improperly shifted the burden to the defendants, because it misconstrued the legislative purpose by "import[ing] the doctrine of conditional res ipsa loquitur from our common law into a comprehensive statutory scheme to relieve DCPP of its burden of proving that a particular parent abused or neglected a child. J.R.-R., 248 N.J. at 360.

The Court expressly rejected the holding In re D.T., explaining that the burden of proof in an abuse or neglect case is one that the Legislature "placed on" the Division, with no indication that it can be shifted to a defendant.  Id. at 359-60, 374.  That improper burden-shifting therefore required reversal and a remand for new findings because it violated the statutory proof requirements.

22

Id. at 367-68, 378. The J.R.-R. Court did not preclude the Division from establishing abuse or neglect by inference from injuries that ordinarily would not occur in their absence, because such an inference was the type of res ipsa loquitur, as opposed to conditional res ipsa loquitur, authorized by N.J.S.A. 9:6-8.46(a)(2). Id. at 370.

Based on J.R.-R., we conclude the court's reliance on In re D.T. when making its abuse and neglect findings regarding Darla's non-tibia related injuries, including her subdural hematoma, skull fracture and multiple rib fractures, "rendered its factfindings fatally flawed and denied the parents a fundamentally fair hearing." Id. at 377. That "structural error" prevented the fact-finding proceeding from being fundamentally fair. Id. at 377-78. We therefore reverse and vacate the October 21, 2020 order and remand "for a new hearing on the abuse and neglect charges" in conformity with its explanation of the Title Nine proof requirements as mandated by J.R-R. Id. at 359-60, 378.

## III.

We reject Oscar's arguments challenging the court's abuse and neglect finding regarding Darla's tibia injury. As noted, the court did not apply principles of conditional res ipsa loquitor to that non-accidental injury as it could

A-0840-20

not be dated, and the court's attendant findings are supported by substantial credible evidence in the record, warranting our deference.

In abuse and neglect matters, our standard of review is "strictly limited." N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010). "[A]ppellate courts 'defer to the factual findings of the trial court because [the trial court] has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a feel of the case that can never be realized by a review of the cold record.'" N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342-3 (2010) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). We owe no deference, however, to the judge's legal conclusions. N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 183 (2010).

In our June 30, 2020 opinion, we instructed the court to consider Oscar's statements to the detective, in which he asked "what if I've dropped her" as "part of a larger point denying any harm to Darla by reaffirming his knowledge that

24

he was bound to testify truthfully under oath." Addressing these concerns, the trial court noted that it

> scrupulously read and was familiar with the entire record. It was cognoscente of the entire colloquy and it does not change the fact that [Oscar] while professing his innocence nonetheless made the statement "what if I've dropped her." The fact that he was under oath does not mean it was truthful. In fact, this Court finds all of [Oscar]'s statements to have been less than truthful, whether under oath or not.

The court's amended findings regarding Oscar's culpability also rested heavily on credibility determinations. Indeed, the court relied upon expert testimony regarding the non-accidental nature of the tibia fracture and that it could not be dated. The court explained that Dr. Hua's expertise in pathology was less relevant than Dr. DeBellis's expertise in child abuse and Dr. Levenbrown's training as a pediatric radiologist and therefore found "Drs. DeBellis and Dr. Levenbrown to be more credible than Dr. Hua."

We therefore disagree with Oscar's contention that the court relied exclusively upon Oscar's response when making its supplemental findings. As noted, the court reviewed the entire record anew, based its decision on credibility findings related to the testifying experts and rejected Dr. Hua's opinions. We are satisfied that the court considered Oscar's entire statement and the record as a whole. Further, we agree with the court that his response, in

25

which he identified a potential issue with Darla's leg before any diagnostic testing, was evidential to the critical issue before the court. We further reject Oscar's argument that the court's decision on this point was "colored by the other injuries and burden-shifting," as the court twice evaluated the evidence as to Darla's tibia injury without relying upon conditional res ipsa.

In sum, we are satisfied that the court's findings regarding Oscar's culpability for the tibia injury are supported by the record. The court considered Oscar's full statements to the police, the medical records regarding the non-accidental nature of the injury, and the credible expert testimony as referenced above.

IV.

Finally, Leslie and Oscar both argue that the trial should be heard by a different factfinder on remand, and the Division does not object. In response, Darla argues that a new factfinder is unnecessary because the court "has shown no bias in factor of one party or the other[]" and has expended significant energy and resources to date hearing this matter. We agree with Leslie and Oscar.

The purpose of a new factfinder is to ensure impartiality and a "fresh judicial examination." P.T. v. M.S., 325 N.J. Super. 193, 220 (App. Div. 1999). Where "the trial court previously made credibility findings, [it is] appropriate

that the matter be assigned to a different trial court." R.L. v. Voytac, 199 N.J. 285, 306 (2009); see also Matter of Guardianship of R., 155 N.J. Super. 186, 195 (App. Div. 1977) (remanding to a different trial judge, where "[t]he judge who heard the matter below has already engaged in weighing the evidence and has rendered a conclusion on the credibility of the Division's witnesses"). Further, in N.J Div. of Youth & Fam. Servs v. A.W., 103 N.J. 591, 617 (1986), our Supreme Court remanded the case to be reconsidered by a new factfinder when the trial judge had heard the evidence and "may have [had] a commitment to its findings."

Under the circumstances presented, we are satisfied that on remand, the matter should be conducted by a new factfinder. Not only has the judge made significant credibility findings, but she has considered the evidence twice, and "may have a commitment to [her] findings." A.W., 103 N.J. at 617. Again, we stress that our decision directing the matter be reassigned is not an expression of our displeasure with the manner in which the judge presided over the proceedings. Rather, as noted, our determination is made to ensure the matter receives an independent evaluation after a new fact-finding proceeding.

In light of our decision that J.R.-R. requires the court to conduct a new fact-finding proceeding, we accordingly have not passed upon the sufficiency of

27

the court's factual findings on remand regarding Darla's other injuries, including her subdural hematoma, skull fracture and multiple rib fractures. We have not addressed those findings because the court made them under the now repudiated conditional res ipsa loquitor paradigm.

Finally, and for similar reasons, we reject Emily's request to be dismissed from the remanded proceedings. The court's decision as it related to her potential culpability with respect to Darla's non-tibia-related injuries was similarly impacted by the court's reliance on In re D.T.

Affirmed in part, reversed, and vacated in part and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION